Brian F. Amery, Esq. (BA 7144)
BRESSLER, AMERY & ROSS
A Professional Corporation
17 State Street
New York, New York 10004
(212) 425-9300
Attorneys for Defendant
RBC Dain Rauscher, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. IRAKLI GLONTI AND DAVID DATESHIDZE,<br><br>Plaintiffs,<br><br>-against -<br><br>LEHMAN BROTHERS, INC. AND RBC DAIN RAUSCHER, INC.,<br><br>Defendant. | Civil Action No. 07-CV-10975<br><br>Hon. Colleen McMahon, U.S.D.J.<br><br>AFFIDAVIT OF RICHARD J. FRANCHELLA |

STATE OF NEW YORK    )
                     ss.)
COUNTY OF NEW YORK   )

I, RICHARD J. FRANCHELLA, of full age, being duly sworn according to law, say:

1. I am employed by defendant RBC Dain Rauscher, Inc. ("RBC Dain Rauscher") as a Complex Director. I submit this Declaration in support of RBC Dain Rauscher's motion to compel arbitration of all of Plaintiffs' claims pursuant to 9 U.S.C. § 3 and to stay this action pending completion of the arbitration pursuant to 9 U.S.C. § 4. This Declaration is based upon my personal knowledge, unless otherwise indicated.

2. The business records of RBC Dain Rauscher reflect that each Plaintiff maintained an account with RBC Dain Rauscher, designated Account Nos. 34443193 (Irakli Glonti) and 24555605 (David Dateschidze) (collectively, the "Accounts").

3. The business records of RBC Dain Rauscher reflect that in connection with Account No. 34443193, Plaintiff Glonti executed a Client Standard Account Agreement ("Account Agreement") on June 7, 2003. A copy of the signature page of the "firm copy" to the Account Agreement signed by Plaintiff Glonti is annexed hereto as Exhibit "A".

4. In connection with Account No. 24555605, Plaintiff Dateschidze executed an Account Agreement on May 19, 2003. A copy of the signature page of the "firm copy" to the Account Agreement signed by Plaintiff Dateschidze is annexed hereto as Exhibit "B".

5. The signature page of each Account Agreement contains the following language in bold-faced type:

- **I understand that my Standard Account is subject to the terms and conditions of the Standard Account Agreement.**

- **I have received and reviewed a copy of the Standard Account Agreement.**

- **THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE IN SECTION 18 ON PAGE 3.**

6. RBC Dain Rauscher's document retention policies provide for the imaging and storage of only the signature pages of account documentation such as the Account Agreements signed by Plaintiffs. The signature page indicates it is "page 1 of 3" of the Agreement. A copy of the full Client Standard Account Agreement is annexed hereto as Exhibit "C".

7. Paragraph 17 on the third page of the Account Agreement, entitled "Arbitration Disclosures," states in bold-faced type and capital letters:

- ARBITRATION IS FINAL AND BINDING ON THE PARTIES

- THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

8. Paragraph 18 on the third page of the Account Agreement, entitled "ARBITRATION," requires Plaintiffs to arbitrate their dispute with RBC Dain Rauscher. Paragraph 18 provides in pertinent part:

> YOU AGREE THAT <u>ALL CONTROVERSIES THAT MAY ARISE BETWEEN YOU AND RBC DAIN CONCERNING ANY TRANSACTION(S), OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT OR BETWEEN YOU AND RBC DAIN PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION</u>. ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN SECTION 16 BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR THE ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH RBC DAIN IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULEMAKING BOARD, AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION.... THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM, SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION THEREOF.

(emphasis added).

_____
Richard J. Franchella

Sworn and subscribed to before
me this 4th day of January, 2008.

_____
Notary Public

BETTE ANN CONNELLY
Notary Public, State of New York
No. 01CO-7720161
Qualified in Suffolk County
Commission Expires Jan. 31, 2010

883955v1

# EXHIBIT A

# RBC Dain Rauscher
Member NYSE/SIPC

## ACOUNT INFORMATION
☐ New Account  ☒ Update

**Account Type:** INDIVIDUAL


\* 1101 | 34443193 | NF53
Firm ID | Account Number | FC #



| Name & Address | Name & Address II |
|---|---|
| IRAKLI GLONTI<br>88 GENESSEE BLVD<br>ATLANTIC BEACH NY 11509 | |

| SSN/EIN | Date of Birth<br>04/27/1962 | SSN/EIN | Date of Birth |
|---|---|---|---|
| Business Phone<br>953-295-1237 | Home Phone | Business Phone | Home Phone |
| Citizenship<br>~~ZIMBABWE~~ GEORGIA | Marital Status<br>MARRIED | US Citizen (Yes or No) | Relationship to Client |
| Employer (If retired, state previous employer)<br>CDN | | Employer (If retired, state previous employer) | |
| Address<br>UZNADZE 2<br>TBIUSI, GEORGIA | | Address | |
| Occupation<br>PRESIDENT | | Occupation | |

Is either party or immediate family member affiliated with or employed by another Broker/Dealer Member Firm? If yes, indicate firm and position. *(Proper authorization must be obtained from the member firm.)*

Is either party or immediate family member any of the following: director, shareholder with 10% or more of the stock, or policy making executive officer of a publicly traded company? If yes, indicate company and position.

If either party or immediate family member is an employee of an RBC Dain Rauscher Inc. member firm, indicate relationship here:

| Date Opened<br>05/23/2003 | Account Transferred From? | Source of Funds<br>ACAT | J/T Source of Funds |
|---|---|---|---|
| Account Source<br>TRANSFER IN | Referred By<br>NONE | # Years Known to FC<br>8 | Annual Income (all sources)<br>$500,000 - 999,999 |
| Client's Investment Experience<br>EXTENSIVE | # Years as an Investor<br>10 | Liquid Assets<br>~~$3,000,000+~~ 5mill | J/T Annual Income (all sources) |
| Net Worth (excluding home)<br>~~$3,000,000+~~ 10mil | Estimated Tax Bracket (%)<br>16-28% | # Dependents (Including self)<br>4 | Custodian's Account Number |

Investment Objectives (risk tolerance)
**AGGRESSIVE GROWTH**

| Initial Order Solicited? | Initial Transaction - list type, quantity and security (do not use symbol)<br>PENDING |
|---|---|

| Trading Authorization on File? | Agent Name & Address (complete if account is operated by Power of Attorney or Trading Authorization) | | |
|---|---|---|---|
| Relationship to Client | Agent's Account # | Reason for Authority | Agent's Investment Experience |

| Financial Consultant Signature | Date<br>6/18/03 | Branch Manager Approval | Date<br>6/18/03 |
|---|---|---|---|

**Client Certification:** I certify that the information provided on this form is true, correct and complete. All persons must sign if this is a joint account.

| Signature<br>X | Date<br>6/1/03 | Signature<br>X | Date |
|---|---|---|---|

nac 11/01

Firm Copy

# EXHIBIT B

MAY 19 '03 12:00 PM RBC DAIN RAUSCHER    212 315 6984 TO 901199532292566   P.06/06

# RBC Dain Rauscher
Member NYSE/SIPC

Firm ID: 1101  Account Number: 24555605  FC#: NF63

## ACCOUNT INFORMATION
☒ New Account    ☐ Update

**Account Type:** _____

| Name & Address | Name & Address II |
|---|---|
| DAVID DATESHIDZE<br>88 GENESSEE BLVD<br>ATLANTIC BEACH, NY 11509 | |

| SSN/EIN | Date of Birth | SSN/FIN | Date of Birth |
|---|---|---|---|
| ✓ | ✓ | | |

| Business Phone | Home Phone | Business Phone | Home Phone |
|---|---|---|---|
| 953 295 1237 | | | |

| Citizenship | Marital Status | US Citizen (Yes or No) | Relationship to Client |
|---|---|---|---|
| GEORGIAN | MARRIED | | |

| Employer (If retired, state previous employer) | Employer (If retired, state previous employer) |
|---|---|
| CDN LTD | |

| Address | Address |
|---|---|
| UZNADZE 2<br>TBILISI, GEORGIA | |

| Occupation | Occupation |
|---|---|
| VICE PRESIDENT | |

Is either party or immediate family member affiliated with or employed by another Broker/Dealer Member Firm? If yes, indicate firm and position.

Is either party or immediate family member any of the following: director, shareholder with 10% or more of the stock, or policy making executive officer of a publicly traded company? If yes, indicate company and position.

If either party or immediate family member is an employee of an RBC Dain Rauscher Inc. member firm, indicate relationship here:

| Date Opened | Account Transferred From? | Source of Funds | J/T Source of Funds |
|---|---|---|---|
| ✓ | LEHMAN | ✓ | |

| Account Source | Referred By | # Years Known to FC | Annual Income (all sources) |
|---|---|---|---|
| | | 4 | $200,000 |

| Client's Investment Experience | # Years as an Investor | Liquid Assets | J/T Annual Income (all sources) |
|---|---|---|---|
| HIGH | 5 | $2 MILLION | |

| Net Worth (excluding home) | Estimated Tax Bracket (%) | # Dependents (including self) | Custodian's Account Number |
|---|---|---|---|
| $5 MILLION | | 3 | |

**Investment Objectives (risk tolerance):** GROWTH (AGGRESSIVE)

**Initial Order Solicited?** ____  **Initial Transaction** - list type, quantity and security (do not use symbol):

**Trading Authorization on File?** ____  **Agent Name & Address** (complete if account is operated by Power of Attorney or Trading Authorization)

**Relationship to Client:** ____  **Agent's Account #:** ____  **Reason for Authority:** ____  **Agent's Investment Experience:** ____

**Financial Consultant Signature:** [signature]  **Date:** MAY 21 2003  **Branch Manager Approval:** ____  **Date:** ____

**Client Certification:** I certify that the information provided on this form is true, correct and complete. All persons must sign if this is a joint account.

**Signature:** X [signature]  **Date:** 5/19/03  **Signature:** X ____  **Date:** ____

MAY 19 '03 13:00    +99532292566    F

# EXHIBIT C

**RBC Dain Rauscher**
Member NYSE/SIPC

Firm ID    Account Number    FC #

# CLIENT STANDARD ACCOUNT AGREEMENT
page 1 of 3

| Name & Address | Name & Address II |
|---|---|
|  |  |

- I understand that my Standard Account is subject to the terms and conditions of the Standard Account Agreement.
- I have received and reviewed a copy of the Standard Account Agreement.
- **THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE IN SECTION 18 ON PAGE 3.**
- This Agreement has not been amended, altered or revised in any way by me, and I agree to be bound by, and comply with, its terms and conditions in their entirety.
- Please sign and return the firm copy.

**Client Certification:** I certify that the information provided on this form is true, correct and complete. All persons must sign if this is a joint account.

| Client Signature | Date | Client Signature | Date |
|---|---|---|---|
| X |  | X |  |

As used in this Agreement, the terms "you", "I", and "me" refer to the client of RBC Dain Rauscher Inc. who seeks to open a standard account agreement, and the term "RBC Dain" refers to RBC Dain Rauscher Inc. In consideration of your continuing or now and hereafter opening an account or accounts for the purchase and sale of securities and commodities for me, or in my name, I agree that all transactions with respect to any such account shall be subject to the following terms:

**1. Client Representations.**
(a) If you are an individual, you represent and warrant that you are of legal age, that no one except you has an interest in your account and you are not an employee of any exchange or of a member firm of any exchange or the National Association of Securities Dealers, Inc. ("NASD"), any other self-regulatory organization, or of a bank, trust company, or insurance company unless you have notified RBC Dain to that effect, and you will promptly notify RBC Dain if you become so employed.
(b) If you are a corporation, trust, partnership or other entity, you represent and warrant that you are duly formed and existing under the laws of your state or jurisdiction of formation and are qualified and (if you are a corporation) in good standing in every jurisdiction in which you do business; the person(s) designated to act for you have been duly authorized by all necessary and appropriate institutional action; such person or persons have full authority to execute this Agreement and all related documents on your behalf and to act for you in all matters regarding your account(s); RBC Dain may at all times rely on the fact of such authorization without any duty to investigate into either the authenticity or extent thereof of such authorization; and the party or parties designated as authorized signatories constitute(s) all of the proper and necessary authorized signatories.

**2. Client's Obligation.**
I agree to notify RBC Dain within ten (10) calendar days of receipt of my confirmation and/or statement of any trades or transactions that were executed without my authorization, any transactions which are not properly reflected on my confirmation or monthly statement or any other activities or omissions by RBC Dain, its agents or employees that I believe to be improper. Unless I object in writing within ten (10) calendar days of receipt of my confirmation or statement, confirmations of transactions and statements for my account shall be binding on me. Any communications regarding errors or misunderstandings with respect to my account should be addressed to the Branch Manager of the branch office where my account is maintained.

**3. Communications.**
Notices and communications may be sent to you at your address given above or at such other address as you may hereafter give RBC Dain in writing, and all communications so sent, whether by mail, telegraph, messenger or otherwise, shall be deemed given to you personally, whether actually received or not.

**4. Accuracy Of Account Information.**
I agree to notify RBC Dain in writing of any material change in my financial circumstances or any change in my investment objectives. I will address such notice to the Branch Manager of the branch office where my account is maintained. Any information I give RBC Dain on or relating to this account will be subject to verification, and I authorize RBC Dain to obtain a credit report about me at any time and to share the credit report with any of RBC Dain's affiliates.

**5. RBC Dain "Financial Consultant" Title.**
The RBC Dain professionals who serve retail clients use the title of "Financial Consultant." This title was selected in recognition of the wide and expanding variety of financial products and services RBC Dain offers its clients. The term "Financial Consultant", as used by RBC Dain, is not intended to imply that its professionals are financial planners as the term is defined by certain state rules and regulations. RBC Dain professionals engage in providing a broad range of financial services and products some of which are offered by affiliated companies. These professionals maintain the necessary licenses required to offer financial products and services including the trading, distribution and sale of investments such as, for example, stocks, bonds, mutual funds, options and insurance and annuity contracts. RBC Dain's professionals are compensated by various means, including commissions or fixed fees, and their compensation may be affected by the overall value of the assets and any margin balances in the accounts which they service.

caa 11/02

**6. Order Routing Policies And Payment For Order Flow.**
RBC Dain has established order routing arrangements with certain exchanges, broker/dealers and/or other market centers (collectively, "market participants") in equity securities and options. These arrangements have been entered into with a view toward the perceived execution quality provided by these market participants, evaluated on the basis of price improvement performance, liquidity enhancement and speed of execution. RBC Dain regularly assesses the execution performance of these market participants on the basis of these three factors. This assessment includes a periodic review of statistics concerning speed of execution, liquidity enhancement and price improvement performance, as well as an evaluation of these factors as they relate to the size of orders routed to these market participants.

All client orders that are subject to these order routing arrangements are sent to market participants that have represented to RBC Dain that they will execute market and marketable limit orders (except large market or marketable limit orders) at prices no worse than the displayed National Best Bid and Offer ("NBBO"). Each of these market participants provides the opportunity for execution of these orders at prices better than the NBBO when the spread between the best bid and best offer price is greater than the minimum variation. Several of these market participants offer RBC Dain automated routing and execution services that offer advantages to smaller client orders in terms of speed and certainty of execution.

RBC Dain receives payment in the form of cash, rebates, or credits against fees and/or research in return for routing client orders in equity and option securities pursuant to these order routing arrangements. Any remuneration that RBC Dain receives for directing orders to any market participant reduces the Firm's execution costs and will not accrue to my account. RBC Dain may also benefit from these order routing arrangements by receiving favorable adjustments of trade errors from these market participants.

RBC Dain also acts as market maker in a number of equity securities and receives orders in these securities from both Clients and other broker-dealers. Orders in these securities are not typically subject to the order routing arrangements described above, nor does RBC Dain enter into formal reciprocal order routing agreements with other broker-dealers. However, RBC Dain may receive a relatively large number of orders in those securities for which it makes a market from those market participants with which the Firm has order routing arrangements. These additional orders allow RBC Dain to make markets that are more broad and deep than it would otherwise be able to make solely as a result of orders from its own clients. Absent specific instructions from me as to where to route an order, depending on the security involved and/or the size of the order, RBC Dain may execute the order itself or with other market participants, including those market participants with which the Firm has established these order routing arrangements.

**7. Designation Of Orders / Payment For Securities.**
Every order I give RBC Dain for the sale or purchase of securities or commodities contemplates an actual sale or purchase. I will deliver to RBC Dain securities or commodities to cover all my sale orders and will pay for all securities and commodities covered by my purchase orders no later than settlement date. RBC Dain may require me to prepay for any order. If I fail to deliver to RBC Dain any securities or commodities which RBC Dain has sold pursuant to my order, RBC Dain is authorized to borrow the securities or commodities necessary to make delivery thereof, and in the event of RBC Dain's inability to borrow or otherwise obtain the commodities or securities, or if there is any change in the price of the securities that creates or would create a loss for RBC Dain, I shall be responsible for any loss RBC Dain may sustain thereby. RBC Dain shall have a reasonable time to deliver to me any securities or commodities which RBC Dain has purchased for my account and for which I have paid in full.

**8. Order Aggregation.**
Any order for my account(s) may be aggregated with orders for the account(s) of other clients and executed as one order. As a result, I may receive a price or average price that is different than the price or average price that I would have received had my order not been aggregated. In addition, aggregation of my order with orders of other clients may result in my order being only partially completed.

**9. Commissions And Fees.**
I agree to pay commissions, charges, interest and fees at RBC Dain's prevailing rates which may be changed from time to time without notice to me, and to pay RBC Dain's reasonable attorneys' fees and interest at the highest lawful rate in the event RBC Dain must take legal action to collect any amounts due from me.

**10. Grant Of Security Interest.**
I represent, warrant and covenant that, whenever I may become indebted to RBC Dain or owe to RBC Dain securities for delivery on sales:
All moneys, securities and other property of mine which RBC Dain may at any time be holding or carrying for me (whether individually or jointly with others) shall be subject to a security interest in favor of RBC Dain as security for all my obligations to RBC Dain, regardless of the account in which the obligation may be created. At any time or from time to time in your discretion, without notice to me, you may apply or transfer any and all moneys, securities, commodities, and other property of mine interchangeably with my accounts with you, and you may pledge, repledge, hypothecate and rehypothecate any and all of my securities or other property which you may be holding or carrying (whether individually or jointly with others), without having in your possession or subject to your control other securities of the same kind and amount, separately or in common with other securities to secure an amount equal to the amount due from me to you or a greater or lesser amount, and you shall not be required to deliver to me the securities deposited or received but shall be required to deliver to me only securities of the same kind and amount;
In the event that any fees that RBC Dain imposes on this or any other account or service are not paid when due within 30 days or otherwise before closing the account, or a petition in bankruptcy or for the appointment of a receiver shall be filed by or against me, or an attachment or garnishment shall be levied or served with respect to any of my accounts, or if I make or am required to make a general or partial assignment of my assets to a creditor), or if I (if an individual) die, or RBC Dain shall deem it, in its sole discretion, necessary for its protection, then you are hereby authorized to close out any accounts, to buy any and all securities which may be short in such accounts, to close any or all outstanding contracts, and to reduce or satisfy any indebtedness of me to RBC Dain by selling or liquidating, at public or private sale, any or all of the securities or other property which may be in your possession (including, without limitation, in this or any other account of mine at RBC Dain) or which may be carried by RBC Dain for me (either individually or jointly with others) and to buy in, at public or private sale, any and all securities sold for the account of but not received from me, all without advertising the same and without prior tender or notice to or demand upon me. Upon any sale, other than a private sale, RBC Dain may purchase the whole or any part thereof for its own account. No specific tender, demand or notice, nor any failure on the part of RBC Dain to exercise such right to reduce or satisfy any such indebtedness shall invalidate the waiver of tender, demand and notice herein contained. After deducting all costs and expenses of such sales and purchases, including commissions, stamp taxes, and any other fees or costs, RBC Dain shall apply the net proceeds to the payment of my obligations to RBC Dain and I shall remain liable for any deficiency remaining in such accounts. I clearly understand that RBC Dain is not obligated to give me notice prior to selling any property held in any of my accounts. I further understand that in the event of a sale of the securities or assets held in any of my accounts with RBC Dain pursuant to this paragraph, I am not entitled to choose which securities in my account are sold.

**11. Termination Of Account.**
I understand that RBC Dain may in its sole discretion prohibit or restrict trading of securities or substitution of securities in any of my accounts. RBC Dain has the right to terminate any of my accounts (including multiple owner accounts) at any time by notice to me. The provisions of this agreement shall survive the termination of any account or any account agreement.

**12. Modification; Assignment.**
Except as herein otherwise expressly provided, no provision of this Agreement shall in any respect be waived, altered, modified or amended unless in writing and signed by an authorized officer of RBC Dain. RBC Dain's failure to insist at any time upon strict compliance with this Agreement or with any of its terms, or any course of conduct on its part, shall in no event constitute a waiver by RBC Dain of any of its rights or privileges. I may not assign this Agreement without the prior written consent of RBC Dain. RBC Dain may assign this Agreement to another party upon providing written notice to you.

**13. Binding Upon Your Estate.**
You hereby agree that this Agreement and all the terms thereof shall be binding upon your heirs, executors, administration, personal representatives, successors, and assigns.

**14. Partial Unenforceability.**
If any provision(s) of this Agreement are or should become inconsistent with any present or future law, rule or regulation of any sovereign government or a regulatory body having jurisdiction over the subject matter of this Agreement, such provision shall be deemed to be rescinded or modified in accordance with any such law, rule or regulation. In all other respects, this Agreement shall continue and remain in full force and effect.

**15. Applicable Law and Regulations.**
All transactions in your account shall be subject to all applicable laws and the rules and regulations of all federal, state and self-regulatory agencies, including, but not limited to, the Securities and Exchange Commission, the Commodity Futures Trading Commission, the New York Stock Exchange, Inc. ("NYSE"), the NASD, the Board of Governors of the Federal Reserve System, and the constitution, rules, and customs of the exchange or market (and the related clearing facility or entity) where executed, as the same may be amended or supplemented from time to time.

**16. Governing Law.**
Except as otherwise provided in Section 18, this agreement and its enforcement will be governed by the substantive laws of the State of Minnesota without regard to principles of conflicts or choice of law.

**17. Arbitration Disclosures.**
- ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

- THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

- PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

- THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

- THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

**18. ARBITRATION.**
YOU AGREE THAT ALL CONTROVERSIES THAT MAY ARISE BETWEEN YOU AND RBC DAIN CONCERNING ANY TRANSACTION(S), OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT OR BETWEEN YOU AND RBC DAIN PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION. ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN SECTION 16 BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR THE ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH RBC DAIN IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULEMAKING BOARD, AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION. YOU MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE GOVERNED BY THE RULES AND REGULATIONS OF AN EXCHANGE OR SELF-REGULATORY ORGANIZATION OF WHICH RBC DAIN IS A MEMBER, BUT IF YOU FAIL TO MAKE SUCH ELECTION BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO RBC DAIN AT ITS MAIN OFFICE BEFORE THE EXPIRATION OF TEN (10) DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM RBC DAIN TO MAKE SUCH ELECTION, THEN RBC DAIN MAY MAKE SUCH ELECTION. THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM, SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION THEREOF.

NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION; OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS ACTION WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION, UNTIL: (A) THE CLASS CERTIFICATION IS DENIED; OR (B) THE CLASS IS DECERTIFIED; OR (C) THE CLIENT IS EXCLUDED FROM THE CLASS BY THE COURT. SUCH FORBEARANCE TO ENFORCE THE AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.