UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
DR. IRAKLI GLONTI,                                    :
Plaintiff                                             :
                                                      : **No. 07 CV 10975 (CM) (AJP)**
and                                                   :
                                                      :
DAVID DATESHIDZE,                                     :
Plaintiff                                             :
                                                      :
                                                      :
          – against –                                :
                                                      :
                                                      :
LEHMAN BROTHERS, INC.,                                :
Defendant                                             :
                                                      :
and                                                   :
                                                      :
RBC DAIN RAUSCHER, INC.,                              :
Defendant                                             :
                                                      :
-----------------------------------------------------------------------x


# Declaration of Dr. Irakli Glonti in Opposition to Defendants' Motions to Compel Arbitration

### Declaration of Dr. Irakli Glonti

I, Dr. Irakli Glonti, declare that I have personal knowledge of the facts set forth below and could, if called upon to testify as a witness at trial, testify that:

### My Preliminary Statement

1.      As I explain more fully below, I placed my complete trust and confidence in Frank Foerster and the financial institutions with which he was employed – first Salomon Smith Barney, next Lehman Brothers Inc. ("Lehman Brothers") and then RBC Dain Rauscher, Inc. ("RBC Dain Rauscher").  Indeed, I relinquished entirely the management and control of my investment assets to them, as did David Dateshidze, giving them the authority, at their discretion, to select, purchase and sell securities in our accounts.

2.      Mr. Dateshidze and I entrusted Lehman Brothers and RBC Dain Rauscher with approximately $4 million of our investment assets that they thereupon used, without our knowledge or authorization, to acquire unsuitable securities which they then excessively traded, earning for themselves commissions of more than $1.067 million and thereby eliminating almost entirely all our investment assets to which we entrusted them.  And then Lehman Brothers and RBC Dain Rauscher permitted our accounts to be looted of approximately $971,000 in cash.

3.      I read, spoke and understood very little English, perhaps a 100 words, but no more than 200 words, and Mr. Dateshidze did not read, speak and understand English whatsoever, when we signed single page, blank documents,

1

true and correct copies of which I attach to my declaration and are marked Exhibits 1 through 16. (Lehman Brothers and RBC Dain Rauscher provided these documents to my attorney in Summer 2007.) I now know these documents were incomplete when Lehman Brothers and RBC Dain Rauscher transmitted them to Mr. Dateshidze and me to sign. The documents Lehman Brothers and RBC Dain Rauscher transmitted to me and Mr. Dateshidze to sign did not contain terms of an agreement to arbitrate the claims that we are asserting in our complaint against them and which they seek to enforce. And Foerster did not tell or explain to us the terms, nor did any representative of Lehman Brothers or RBC Dain Rauscher. Foerster only told us the documents which he presented us to sign to be a "mere formality" to open an account with the firms – something other than what Lehman Brothers and RBC Dain Rauscher now say the documents are.

4.     I acted as an intermediary between Foerster and Mr. Dateshidze, explaining to Mr. Dateshidze that which Foerster told me, as best I could, about the single page, blank documents, that he transmitted to us and about which we now know Lehman Brothers and RBC Dain Rauscher say are different from and not actually what Foerster told us they were and, indeed, were incomplete at the time Foerster presented them to us.

5.     Foerster did not tell us the documents that he transmitted us to sign had legal significance and could afterwards affect our legal rights. Foerster only told me the documents he presented to us are a "mere formality" for us to open accounts at the firms. He simply presented us one or two pages of blank documents

2

and then instructed us to sign our names where he had indicated on the document. And Foerster never presented to me or Mr. Dateshidze the documents to which Lehman Brothers and RBC Dain Rauscher now refer. The only documents about which Mr. Dateshidze and I knew were the documents Foerster gave us and told us to be a "mere formality" to open our accounts at the firms. I accepted Foerster's representations without question because he had befriended me and he never gave me any reason to question his word. And furthermore, I believed him because he was employed by what I believed to be reputable United States investment firms.

6.      Foerster, Lehman Brothers and RBC Dain Rauscher were in a position superior to that of Mr. Dateshidze and I. They possessed full and complete knowledge of the terms and contents of the documents of which only now we learn we received a portion thereof, and yet they elected not to tell us the terms and contents of these documents and the affect such documents would have on our legal rights. In other words, they told us the documents were something other than what they actually were.

7.      As I will explain more fully below, Foerster befriended me and remained my friend for almost 6 years, telling me (a) I could be at ease entrusting him and Salomon Smith Barney, then Lehman Brothers and later RBC Dain Rauscher to manage and control my investment assets; (b) that they would tell and explain to me everything that was necessary for me to know; and (c) that everything he and they said to me would be true and I did not have any reason at all to question what he and they said to me.

3

8.      Before I encountered Foerster, I had never before placed my financial assets in the hands of a United States-based financial institution.  I visited the United States, for the first in my life, in May 2000, for the specific purpose of having Foerster open an investment account for me at Salomon Smith Barney to which I would relinquish management and control to the firm and him.

9.      I was entirely unfamiliar with opening account documents used by American investment firms, such as Salomon Smith Barney, Lehman Brothers and RBC Dain Rauscher.  And, of course, Foerster did not explain the affect such documents had on my legal rights; nor did anyone else associated with Salomon Smith Barney, Lehman Brothers or RBC Dain Rauscher ever explain to me the significance of the documents.

10.     All Foerster explained to me was that the signature pages were a "mere formality" to open an account.  And I certainly did not know otherwise, because I was not provided with the entire document and if I had I been, I could not have read or understood it, which, of course, Foerster and these firms knew.  They therefore should have, before hand, told me and Mr. Dateshidze of the affect signing such documents would have on our legal rights.

11.     Obviously Foerster and other representatives of Salomon Smith Barney, Lehman Brothers and RBC Dain Rauscher knew of my handicap, but they did not feel it important to provide me with the entire document before I and Mr. Dateshidze signed it.  Although I and Mr. Dateshidze placed our trust and confidence in Foerster and the firms, relinquishing entirely to them the

4

management and control of our investment assets, they elected to tell me and Mr. Dateshidze nothing about the document.

12.    Thus, Foerster, Lehman Brothers and RBC Dain Rauscher never told me nor Mr. Dateshidze about the terms of the agreement which they seek to enforce, nor did they ever provide me or Mr. Dateshidze with the documentation to which they refer so we could have had a reasonable opportunity to learn of the terms of the agreement and of the affect such terms would have on our legal rights, before signing the document.

13.    I have explained my dealings with Foerster, Lehman Brothers and RBC Dain Rauscher, in a two hour long meeting, on July 2, 2007, to special agents of the Federal Bureau of Investigation, United States Immigration and Customs Enforcement and Criminal Investigation Division of the Internal Revenue Service.

14.    I am informed by my attorney that thereafter this matter was referred by the federal criminal investigators to the Office of the United States Attorney for the Southern District of New York for prosecution and I have the status of being a victim of violations of United States laws.

## My Background

15.    I am a citizen of the Republic of Georgia and I reside at 27 Ivane Javakhishvili Street, Tbilisi 0102, Georgia.

16.    I am 45 years old.  I was educated in Georgia, which then was a part of the Union of Soviet Socialist Republics ("Soviet Union"), and received my medical degree in 1985.  I received further specialized training in cardio-anesthesiology, in

Moscow, obtaining a degree of Doctor of Philosophy in this field. I then practiced medicine, in Moscow, from 1985 through 1991.

17.     I returned to Georgia, in 1991, immediately after the collapse of the Soviet Union. In Georgia, I formed a business venture trading in oil products. And, in 1998, I started a telecommunications business there.

18.     Afterwards, I returned to Moscow, where I continued as a trader in oil products and then expanded my business to cover crude oil refining.

**I have received no formal instruction in the English language.**

19.     I have never received formal instruction in the English language. I am self-taught. I taught myself, gradually and over time, to speak, read and write English, but only began earnestly, in 2002, to do so. Before then, I knew about 100 words, but no more than 200 words of English, and therefore I was under a severe disability and at a severe disadvantage when it came for me to communicate in English – both speaking the language and understanding it. And during 2003, though my capability to comprehend English did improve, it did not improve measurably.

20.     I have only lately grasped the language, but I still have considerable disability understanding and communicating in English, such that I find it is necessary for me, at times, to have a person, who is fluent in both the Georgian and English, to interpret for me. Indeed, my declaration was prepared for me because of my disability.

6

21.    For example, when, on July 2, 2007, I met with criminal investigators from the Federal Bureau of Investigation, United States Immigration and Customs Enforcement and Criminal Investigation Division of the Internal Revenue Service, I was accompanied by a translator on whom I called to assist me when I had difficulty understanding the questions the investigators asked me.

### I meet with Foerster and he befriends me, telling me to place my trust and confidence in him.

22.    In or about Spring 2000, I began to consider transferring a portion of my investment assets, which then were being entirely managed and controlled for me by investment firms based in Switzerland, to an investment firm based in the United States.

23.    I was introduced to Foerster by an Georgian acquaintance who resided in Moscow, as I did at this time.

24.    My acquaintance told Foerster that I had considerable wealth and funds available to entrust to an investment firm in the United States to manage and control.

25.    At this time Foerster was employed as a stockbroker with Salomon Smith Barney.

26.    I spoke with Foerster over the telephone numerous time telling him about my interest in transferring a portion of my investment assets from Switzerland to the United States.

27.     Because I did not have any command of the English language, I understood then only approximately 100 words, thus when I spoke to Foerster over the telephone, I told Foerster of my disability and instructed Foerster when speaking to me to speak extremely slow and to use simple words and expressions, if I was at all to understand what he would have to say.  The Georgian acquaintance to whom I have referred assisted me, because his command of English was much better than mine.

28.     In these telephone calls, Foerster encouraged me to travel to the United States to meet with him and to discuss placing my investment assets with Salomon Smith Barney and him to manage and control.  Indeed, Foerster later instructed me on the procedure involved to obtain a United States visa which was necessary for me to have to enter the United States.

29.     I arrived, in the United States, for the first time in my life, on May 22, 2000.

30.     I spent three weeks in New York City, and Foerster spent the entire time of my visit with me, except for several days.

31.     Foerster encouraged me to become his friend and to place my trust and confidence in him.

32.     And Foerster told me that I could rely upon him and he would not mislead me.

33.     Since this was my first visit ever to the United States, Foerster traveled extensively with me around New York City introducing me to the City,

showing me points of interest, taking me to events, restaurants, and even to his home where he introduced me to his wife and his three children.

34.     Foerster did all of this, I am now convinced, to disarm me so I would have no cause to doubt or distrust what he would tell me in the future about the performance of the investment assets over which I would relinquish management and control to Salomon Smith Barney and him, later to Lehman Brothers and him and afterwards to RBC Dain Rauscher and him.

35.     During my visit, I opened-up to Foerster and disclosed to him the extent of my wealth, telling Foerster I had several million dollars available to place with an investment firm in the United States to manage and control.

### Foerster instructs me on opening an investment account at Salomon Smith Barney.

36.     During my visit, Foerster took me to his office at Salomon Smith Barney and guided me through the process to open an account with the firm.

37.     Knowing full well that I operated under a severe disability – my capability to speak, read and understand English was limited in the extreme – and recognizing I was absolutely unfamiliar with the methods of United States investment firms, Foerster presented me with, I believe, a single-page document and directed me to the spot on the page of the document at which I should sign my name.

38.     Foerster told me the document to which I was about to sign was a "mere formality" associated with opening an account in the United States.

39.    Foerster did not tell me there were any other implications for me to signing the document, and most certainly he did not tell me I could lose legal rights I had or that there were other pages to the document.

40.    And no one at Salomon Smith Barney told me there were legal implications for me to signing such a document, for example, I could lose legal rights I had.

41.    I followed Foerster's instructions and signed the document he described to me to be a "mere formality" to open an account at Salomon Smith Barney.

42.    And I had no reason to doubt the truth of what Foerster had told me, because immediately before then he had given me a tour of the Salomon Smith Barney offices.  For example, Foerster escorted me to Salomon Smith Barney's analyst department, where the personnel there – some of whom appeared to me to be elder statesmen-type – praised Foerster's investment acumen and abilities.  This gave me more reason to be secure in my decision to place my trust and confidence in Foerster.

43.    On opening my account at Salomon Smith Barney, I transferred $200,000, and later $300,000, to the account and relinquished to Salomon Smith Barney and Foerster management and control of it, giving them the authority, at their discretion, to select, purchase and sell securities in my account.

## Foerster instructs me on opening an investment account
## at Lehman Brothers.

44.    In or about September 2000, Foerster telephoned me, where I was then in Africa, to inform me that he received an offer from Lehman Brothers' global head of its Private Client Services Group to join the firm.

45.    In telephone calls Foerster placed to me afterwards, and while I was still in Africa, he encouraged me to open an account at Lehman Brothers.  He said to me I would be doing him a great favor and advancing his career if I did and I told him I would.  This is because Foerster had told me the investment assets I entrusted to him and Salomon Smith Barney to manage and control had appreciated in value by as much as 20%.

46.    Immediately on Foerster's employment by Lehman Brothers, he had delivered to me, in Tanzania, Africa, where I was then, two blank, single-page documents that he told me, over the telephone, to be a "mere formality" for him to use to open an account for me at Lehman Brothers.

47.    Knowing of my disability with and limited capability of reading and understanding English, Foerster instructed me to sign each document at the spot he had indicated for me sign my name.

48.    Following Foerster's guidance, I signed the two blank, single-page documents at the spots on each page at which Foerster instructed me to sign my name.  And I expressed the date on which I signed each document in the sequence in which I am accustomed, day-month-year.

11

49.    LB 00683, a true and correct copy of which is attached to my declaration and is marked Exhibit 1, appears to be a copy of the document Foerster transmitted to me to have me sign, but the document Foerster actually transmitted to me was blank and none of the information reported on the document in its current format appeared on the document that was originally transmitted to me by Foerster.

50.    LB 00685, a true and correct copy of which is attached to my declaration and is marked Exhibit 2, appears to be a copy of the document Foerster transmitted to me to have me sign, but the document Foerster actually transmitted to me was blank and none of the information reported on the document in its current format appeared on the document that was originally transmitted to me by Foerster.

51.    Foerster did not then nor afterwards tell me of the terms of these documents or the legal significance of my action.  And Foerster did not tell me that there were other pages to the document.

52.    And, of course, I could not learn for myself the terms of the document to which Lehman Brothers now refers, because Lehman Brothers and Foerster did not tell me of them or provide to me the document containing the terms.

53.    And, at no time afterwards, did any representative of Lehman Brothers provide me with the entire document or inform me of the terms of the document or its legal consequences, or even attempt to verify verbally that I received the entire document

12

54.    Representatives of Lehman Brothers had ample opportunity to inform me of such because, as I explain below, Foerster later introduced me to them.

55.    In addition to the investment assets that I had Foerster transfer from Salomon Smith Barney to Lehman Brothers, I deposited over time almost $1.3 million to my account at Lehman Brothers and over which I had relinquished management and control to the firm and Foerster, giving them the authority, at their discretion, to select, purchase and sell securities in my account.

### I meet with Foerster and Lehman Brothers' executives, at the firms' New York City headquarters.

56.    On October 22, 2000, I arrived in New York City, for a two-week visit with Foerster.

57.    Foerster then invited me to Lehman Brother's offices to visit with the Lehman Brothers' officers, including the global head of its Private Client Services Group, Foerster's branch manager and, at least, one other executive, a senior vice president.

58.    The Lehman Brothers' executives expressed an interest in working with me in developing overseas investments for their firm.

59.    And the Lehman Brothers' executives asked that I consider utilizing the firm's capital generating capabilities to assist me in expanding the scope of my Georgia-based telecommunications company, promising me they could arrange as much as a $30 million capital investment.

60.    Lehman Brothers' branch manager spoke to me about Foerster, lauding Foerster's accomplishments and investment acumen.  This, of course, gave me the additional confidence that I made the right decision by entrusting my investment assets to Lehman Brothers and Foerster to manage and control.

61.    Although I spent considerable time with these Lehman Brothers' executives, for example, I had lunch with the branch manager, they did not tell me of the terms of the document or its legal consequences to which Lehman Brothers now refers and of which Foerster had only provided to me the signature pages; nor did they attempt to verify verbally that I received the entire document.  And afterwards, no one at Lehman Brothers made such an attempt.

**Foerster does not give me any reason to question his word.**

62.    Foerster spent considerable time with me outside of Lehman Brothers, during my visit to New York City.

63.    Every day of my visit, Foerster either had lunch or dinner with me.

64.    We visited museums together; we attended theaters and concerts together; we shared our common interest in jazz and together we went to jazz clubs; and we generally roamed about New York City experiencing the city together.

65.    Foerster's wife too joined us on several occasions for dinner and attended a Broadway show with us.

66.    All of this put me at ease with Foerster, such that I could feel comfortable that I made the "right" decision to surrender my investment assets to Lehman Bothers and Foerster to manage and control.

14

67.    And Foerster told me there was no reason for him to ever lie to me, first, because he was my close friend and, second, because he and United States securities firms, such as Lehman Brothers, were subject to strict internal company, as well as government, oversight, and they would be punished if they ever lied to a customer.

### Foerster builds on our friendship, leaving me with absolutely no reason to doubt his word.

68.    My additional visits with Foerster reinforced my firm belief that I could, without reservation, place my full and complete trust and confidence in him.

69.    In 2001, I traveled, from Moscow to New York City, to visit with Foerster twice.  And on each visit, my son accompanied me.

70.    On my first visit, I spent almost a month, from May 28, 2001 through June 27, 2001, regularly visiting with Foerster and his family.

71.    We exchanged gifts and cards with one another and Foerster encouraged me to believe he meant me to be part of his family.

72.    I had previously been ill and was making a slow recovery back to full health, and Foerster and his wife were thus very attentive to me and my needs.

73.    Foerster promised me he would treat my son as he would treat his son and, thereafter, Foerster, as he had promised, took my son alone or along with his children to restaurants, movies and Central Park, and even to a New York Yankees baseball game.

74.     And Foerster was specifically attentive to my needs on this occasion, because I had brought my son to the United States to receive medical attention.

75.     Foerster arranged the medical appointments for my son and transportation for us to the medical facilities, in Danbury, Connecticut, at which my son was being treated, and hotel accommodations for us.

76.     And Foerster accompanied me and my son to Danbury, Connecticut, providing translation when needed, knowing full well the disability I had reading, speaking and understanding English.

77.     It was at this time, that Foerster's wife offered me and my son the use of their apartment on our next visit to the United States, during which my son would resume his medical treatment.

78.     The attention and care to which Foerster and his wife gave me and my son left me without a doubt that I could trust whatever Foerster told me and I could feel assured I was part of Foerster's family.

79.     During then and after, Foerster represented to me the investment assets to which I had entrusted Lehman Brothers and him to manage and control consistently appreciated in value.

80.     My son and I returned to the United States, on August 11, 2001, for almost another month long visit with Foerster and his family.

81.     On this visit, we stayed with Foerster at his family's apartment in New York City.

82.     When I was briefly ill during this visit, Foerster, in my place, took my son with him to restaurants, movies and Central Park.

83.     And Foerster as well was attentive to my care and needs, such that I came to rely completely on Foerster to arrange the smallest of matters relating to my trip.

84.     Foerster encouraged me not only to bond with and become emotionally close to his wife and children, but he exerted every effort to have me bond and become emotionally close with his parents and his wife's parents.

85.     I accompanied Foerster's parents, who visited Foerster from their home in Germany, on excursions out and about New York City, and Foerster succeeded in having a close bond between me and his parents develop, such that when I later traveled with Foerster to Europe, Foerster's mother invited me to stay with her at her home.

86.     Foerster's mother expressed to me how appreciative she was that Foerster and his family had such a friend as me.

87.     And my son and I were frequent invited guests at family functions, at the beach home of Foerster's wife's parents.  There I met Foerster's wife's siblings and their families.  And there were times that I would spend the weekends at their home at the beach.

88.     Foerster completely disarmed me, because involving me so extensively with his family was a sign to me of total friendship, such that I could not doubt or distrust what Foerster had told me or would tell me.

17

89.    While with Foerster in New York, it was not uncommon for him to have me sign a single-page blank document that he described to me to be a "mere formality" of Lehman Brothers.

90.    I would dutifully sign this single-page document, at the place on the page Foerster instructed me to sign my name, knowing only the purpose for my signature was for the reason given to me by Foerster.

91.    I was led to believe I would offend "my friend" if I attempted to verify with anyone else the content and purpose of that which Foerster asked me to sign.

**Foerster and I travel together through Italy.**

92.    In February 2002, Foerster and I spent three days together experiencing Rome, its restaurants, historic sites and museums.

93.    The camaraderie between Foerster and I, as we experienced Rome together, disarmed me and eliminated any basis for me to question or doubt the truth of whatever Foerster told me or would tell me about the performance of the investment assets to which I had entrusted to Lehman Brothers and him.

**I arrange with Foerster to open an account for David Dateshidze at Lehman Brothers.**

94.    In March 2002, I arranged with Foerster to open an investment account for my brother-in-law, David Dateshidze.

95.    Foerster transmitted by facsimile, two blank, single-page documents to me, in Tbilisi, Georgia, on which for me to have Mr. Dateshidze sign his name.

96.    I acted as an intermediary for Foerster and Mr. Dateshidze because Mr. Dateshidze has absolutely no command of English.  He does not speak, read, write or otherwise understand English.

97.    Afterwards, Foerster telephoned me and gave me instructions to explain to Mr. Dateshidze that the two blank, single-page documents I received were a "mere formality" for Foerster to use to open an account for Mr. Dateshidze at Lehman Brothers.

98.    Foerster then guided me to the place on each document on which he indicated Mr. Dateshidze was to sign his name.

99.    I followed Foerster's instructions and Mr. Dateshidze signed each document at the place at which Foerster directed him to sign his name and then I re-transmitted the documents to Foerster.

100.    LB 00687, a true and copy of which is attached to my declaration and is marked Exhibit 3, appears to be a copy of the document that Foerster transmitted to me on which to have me have Mr. Dateshidze sign his name, but the document Foerster actually transmitted to me was blank and none of the information reported on the document in its current format appeared on the document that was originally transmitted to me.

101.    LB 00688, a true and correct copy of which is attached to my declaration and is marked Exhibit 4, appears to be a copy of the document that Foerster transmitted to me on which to have me have Mr. Dateshidze sign his name, but the document Foerster actually transmitted to me was blank and none of

19

the information reported on the document in its current format appeared on the document that was originally transmitted to me.

102.    Foerster did not then nor afterwards tell me of the terms of the document or the legal significance of Mr. Dateshidze's action, or that there were other pages to the document.

103.    And, of course, I could not learn for myself because Foerster did not provide me with the entire document, to which Lehman Brothers now refers, for me to learn that to which Mr. Dateshidze had purportedly agreed, and which was just as he did with me.

104.    At no time afterwards, did any representative of Lehman Brothers provide me with the entire document, or inform me of the terms of the document or its legal consequences to Mr. Dateshidze, or even attempt to verify verbally that Mr. Dateshidze received the entire document, though they had ample opportunity to do this with me.

105.    Shortly after Mr. Dateshidze opened his account at Lehman Brothers, he deposited approximately $225,400, and later $196,000, in his account, relinquishing management and control of it to Lehman Brothers and Foerster and giving them the authority, at their discretion, to select, purchase and sell securities in his account.

**I return to the United States, in August 2002, to visit
with Foerster and his family.**

106.    In August 2002, I returned to the United States, and for two weeks, between August 14, 2002 and August 28, 2002, I visited with Foerster and his family.  And during this time I stayed with Foerster at his apartment in New York City.

107.    And as before, Foerster devoted extensive periods of his time to me, taking time-off from work to be with me, and when he could not, he arranged to meet with me for lunch or afterwards for dinner.

108.    During my visit, Foerster and I jogged together in Central Park almost every morning.

109.    And as before, Foerster encouraged me to develop further emotional ties to his family, such that I again spent at least one weekend during my visit with Foerster's family, at his Foerster's wife's parent's beach home on Long Island.

110.    And as had become the custom, we exchanged gifts of appreciation with one another.

**Foerster informs me, in May 2003, that he left Lehman Brothers
and joined RBC Dain Rauscher.**

111.    On or about May 19, 2003, Foerster telephoned me, while I was in Tbilisi, to tell me that he had ended his association with Lehman Brothers and had joined RBC Dain Rauscher.

112.    In this telephone call, Foerster requested that I give him my permission to open accounts for Mr. Dateshidze and me at RBC Dain Rauscher and

21

to transfer funds from our accounts at Lehman Brothers to RBC Dain Rauscher for him and RBC Dain Rauscher then to manage and control.

113.    Foerster then, by facsimile, transmitted to me, in Tbilisi, Georgia, documents for Mr. Dateshidze and I to sign to open our accounts with RBC Dain Rauscher.

114.    Knowing my capability to read English to be severely limited and knowing full well Mr. Dateshidze could not read English at all, Foerster did not transmit to us the account opening documents to which RBC Dain Rauscher now refers, but transmitted single, blank pages of the account opening documents on which there only appeared to be space provided for our signature.

115.    Foerster told me, as he had told me before when I had opened accounts with him at Salomon Smith Barney and Lehman Brothers, the documents he transmitted to us to sign were a "mere formality" to be used to open an account at RBC Dain Rauscher.

116.    Foerster then instructed me to pay attention only to the space provided for our signatures that he indicated on each such page at which Mr. Dateshidze and I should sign our names.

117.    Mr. Dateshidze and I followed his instructions, signed the documents and re-transmitted the documents, by facsimile, to him.

118.    RBC 0000013, a true and correct copy of which is attached to my declaration and is marked Exhibit 5, appears to be a copy of the document Foerster transmitted to me for me to sign, but the document Foerster transmitted was blank

22

and none of the information reported on the document in its current format appeared on the document that was originally transmitted to me.

119.   RBC 0000442, a true and correct copy of which is attached to my declaration and is marked Exhibit 6, appears to be a copy of the document Foerster transmitted to me to have Mr. Dateshidze sign, but the document Foerster transmitted was blank and none of the information reported on the document in its current format appeared on the document that was originally transmitted to me to have Mr. Dateshidze sign.

120.    RBC 0000443, a true and correct copy of which is attached to my declaration and is marked Exhibit 7, appears to be a copy of the document Foerster transmitted to me to have Mr. Dateshidze sign, but the document Foerster transmitted was blank and none of the information reported on the document in its current format appeared on the document that was originally transmitted to me to have Mr. Dateshidze sign.

121.   RBC 0000444, a true and correct copy of which is attached to my declaration and is marked Exhibit 8, appears to be a copy of the document Foerster transmitted to me to have Mr. Dateshidze sign, but the document Foerster transmitted was blank and none of the information reported on the document in its current format appeared in the document that was originally transmitted to me for Mr. Dateshidze to sign. .

122.   RBC 0000445, a true and correct copy of which is attached to my declaration and is marked Exhibit 9, appears to be a copy of the document Foerster

transmitted to me, on May 29, 2003, to have Mr. Dateshidze sign, but the document Foerster transmitted was blank and none of the information reported on the document in its current format appeared in the document that was originally transmitted to me to have Mr. Dateshidze sign.

123.    Foerster did not then nor afterwards tell me of the terms of the documents or the legal significance of my action or that of Mr. Dateshidze, or that there were other pages to the documents which he had not transmitted to us.

124.    And, of course, I could not learn for myself the terms because Foerster did not provide me with the entire document, to which RBC Dain Rauscher now refers, for me to learn that to which Mr. Dateshidze and I purportedly agreed.

125.    And, at no time afterwards, did any representative of RBC Dain Rauscher provide me with the entire document to which it refers or inform me of the terms of such document or its legal consequences, or even attempt to verify verbally that I received the entire document.

126.    Representatives of RBC Dain Rauscher had ample opportunity to inform me of such because when I visited Foerster at his office they could have provided me with the entire document to which they refer or have informed me of its significance.

127.    In addition, to the funds in my investment account at Lehman Brothers that I had Foerster transfer to my account at RBC Dain Rauscher, I transferred, over time, more than $2.1 million in cash and securities to my account, relinquishing the management and control of these assets to the firm and Foerster

and giving them the authority, in their discretion, to select, purchase and sell securities in my account.

128.    Mr. Dateshidze did likewise, transferring $75,000 to his RBC Dain Rauscher account, adding to the funds Foerster had transferred from his account at Lehman Brothers.  And Mr. Dateshidze relinquished the management and control of these funds to RBC Dain Rauscher and Foerster, giving them the authority, at their discretion, to select, purchase and sell securities in his account.

**Foerster joins me and my family on our vacation in London.**

129.    In June 2003, Foerster joined me and my family for vacation in London.  Foerster spent his entire time there with me and my family.

130.    During Foerster's visit with me, he asked me to sign two single page, blank documents again telling the forms were a "mere formality" associated with opening my account at RBC Dain Rauscher.

131.    Having the utmost trust and confidence in what Foerster told me, I followed his instructions and signed my name at the places on each document at which he indicated that I should sign my name.

132.    RBC 0000001, a true and correct copy of which is attached to my declaration and is marked Exhibit 10, appears to be a copy of the document Foerster gave me to sign, but the document Foerster actually gave was blank and none of the information reported on the document in its current format appeared in the document that was originally given to me by Foerster for me to sign.

133. RBC 0000002, a true and correct copy of which is attached to my declaration and is marked Exhibit 11, appears to be a copy of the document Foerster gave me to sign, but the document Foerster actually gave me to sign was blank and none of the information reported on the document in its current format appeared in the document that was originally given to me by Foerster for me to sign.

134. Foerster did not then or afterwards tell me of the terms of the documents to which RBC Dain Rauscher now refers or the legal significance of my action, or that there were other pages to the document.

135. And, of course, I could not learn for myself because Foerster did not provide me with the entire document, to which RBC Dain Rauscher now refers, for me to learn that to which I purportedly agreed.

136. And, at no time afterwards, did any representative of RBC Dain Rauscher provide me with the entire document or inform me of the terms of the document or its legal consequences, or even attempt to verify verbally that I received the entire document. .

137. Representatives of RBC Dain Rauscher had ample opportunity to inform me of such, because when I visited Foerster at his office they could have provided me with the entire document or informed of its significance.

### I return to the United States, in July 2003, to visit
### with Foerster and his family.

138.    In July 2003, I returned the United States to visit with Foerster and his family.

139.    From July 20, 2003 through July 26, 2003, I visited with Foerster and his family, in New York City, and spent my entire time with him.  I stayed as an invited guest of Foerster at his apartment in New York City.

140.    We celebrated with Foerster's wife her birthday at a restaurant and then attended a rock concert in further celebration.

141.    And I again weekended at the beach with Foerster and his family, at Foerster's wife's parents' beach property on Long Island

### Foerster and I meet up again, in November 2003, this time in London.

142.    Foerster and I again met up to spend time together, this time in London.

143.    It was then that he presented to me a three page document to sign, a version of RBC 000008-0000010, telling me once again it was a "mere formality" of RBC Dain Rauscher and I should just sign it.

144.    Foerster presented the document to me to sign, on November 13, 2003, late at night, in a London hotel bar, in which there was almost no light, and after we had spent considerable time before drinking alcoholic beverages.

145.    The version of RBC 0000008-0000010 that Foerster presented to me to sign was entirely blank with the exception that Foerster had himself printed on the

first page (RBC 0000008) "IVANE JAVACHISHVILI 27, TBILISI, GEORGIA, 38002. He then instructed me to sign my name right below where he had printed my home address in Tbilisi, Georgia, and I did.

146.    Foerster then directed me to the third page of the document (RBC 0000010) and instructed me to sign my name and write the date on which I signed the document at the place on the document to which he directed me.

147.    Having put my full and complete trust and confidence in him, I dutifully followed my friend's instructions and signed the document at the spot on the page at which Foerster directed me to sign my name and I wrote the date on which I signed the document.

148.    RBC 0000008-0000010, a true and correct copy of which is attached to my declaration and is marked Exhibit 12, appears to be a copy of the document Foerster gave to me to sign, late at night, in the hotel bar, but the document Foerster presented was blank, with the exception of my street address, in Tbilisi, Georgia, which Foerster had himself printed on the document, and none of the information reported on the document in its current format appeared on the document that was originally presented to me by Foerster for me to sign.

149.    Foerster did not then nor afterwards tell me of the terms of the document, to which RBC Dain Rauscher now refers, and the legal significance of my action, or tell me there were other pages to the document.

150.    And, of course, I could not learn for myself because he did not provide me with any document to which RBC Dain Rauscher now refers, to learn that to

28

which I purportedly agreed.

151.    And, at no time afterwards, did any representative of RBC Dain Rauscher provide me with the document to which this document refers and to which RBC Dain Rauscher now refers, or inform me of the terms of such document and its legal consequences; and, of course, no representative of RBC Dain Rauscher made an attempt to verify verbally that I received the entire document.

152.    Representatives of RBC Dain Rauscher had ample opportunity to inform me of such because when I visited Foerster at his office they could have provided me with the entire document or have informed of its significance.

### There are documents in RBC Dain Rauscher's possession on which my signature and that of Mr. Dateshidze are forged.

153.    After RBC Dain Rauscher was notified by my attorney of the claims that I and Mr. Dateshidze are making against it, RBC Dain Rauscher produced RBC 00000007, 0000447-0000449, 0000451 and 0000453, true and correct copies of which are attached to my declaration and are marked Exhibits 13, 14, 15 and 16, respectively.

154.    I have never before seen RBC 00000007.

155.    The signature appearing on RBC 00000007 is not my signature.  It is a forgery.

156.    I have never before seen RBC 0000447-449, nor has Mr. Dateshidze before seen this document.  And if such a document had been transmitted to Mr. Dateshidze by either Foerster or RBC Dain Rauscher, it would have been

29

transmitted first to me and I would have afterwards transmitted it to Mr.

Dateshidze.  This is because Mr. Dateshidze is incapable of reading and

understanding English and I acted as his intermediary serving to explain, as best I

could, that which Foerster instructed us to do.

157.   Mr. Dateshidze informs me the signature appearing on RBC0000449 is

not his signature and it is a forgery.

158.   I have never before seen RBC 0000451 and 0000453, nor has Mr.

Dateshidze ever before seen these documents.

159.   Mr. Dateshidze informs me the signatures appearing on RBC0000451

and 0000453 are not his signatures and the signatures are forgeries.

I declare under penalty of perjury, under the laws of the United States, that the foregoing Declaration is true and correct.

I have signed this declaration on January _6_, 2008, in Tbilisi, Republic of Georgia.

_____

Dr. Irakli Glonti

31

# LEHMAN BROTHERS
**Customer Account Services**
**P.O. Box 3760**
**New York, NY 10008-3760**



## Client Agreement

| CPI 3025 |

Before you sign this agreement, read it thoroughly and return this completed and signed agreement to Lehman Brothers at the address on the left side of this page. Subsequently you will receive literature containing important information about new accounts. Read the information carefully and retain it for future reference.

| Account Number | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Branch | | | Account | | | | | | | | | | | |
| 8 | 3 | 1 | 2 | 2 | 7 | 8 | 8 | 1 | 8 | 4 | 7 | 2 | | |

**Account Title / Name**
Irakli Glonti

**Account Title / Name**
1. Javachishvili 27 Tbilisi 380002 Georgia

Mailing Address

**A. Tax Certification.** Under penalties of perjury, I certify that the number shown below (and to the left) is my correct taxpayer identification number or if not, then the number I have entered below (and to the right) is my correct tax identification number, and that I am not subject to backup withholding because (a) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of failure to report all interest and dividends, or (b) the IRS has notified me that I am no longer subject to backup withholding (see below), or (c) I am exempt from backup withholding (see below). *Note: You must cross out (b) above if you are currently subject to backup withholding because of underreporting interest or dividends on your tax return. The Internal Revenue Service does not require your consent to any provisions of this document other than the certifications required to avoid backup withholding.*

For those exempt from backup withholding (see instructions on page 4), write the word "EXEMPT" here: _____

**B. Client Acknowledgement.** I (we) hereby acknowledge that I (we) have read, understand and agree to the terms of this agreement. If this is a joint account, we further acknowledge that we have read, understand and agree to the terms of this agreement contained in paragraph 21. *Note: Texas residents must execute a Texas Joint Account Supplement agreement (form 3682).* I (We) acknowledge that I (we) have received a copy of the agreement which contains a pre-dispute arbitration clause at Paragraph 22: I (We) have read it and agree to its terms.

| 1. Account Owner's Signature (Please sign in box) | Date | 2. Account Owner's Signature (Please sign in box) | Date |
|---|---|---|---|
| *signature* | 10.10.00 | | |
| 3. Account Owner's Signature (Please sign in box) | Date | 4. Account Owner's Signature (Please sign in box) | Date |
| | | | |

**C. Name Disclosure.** Please indicate your choice as to the release or withholding of your name, address and securities positions to issuing corporations.
☐ NO, I do not want ⎤ my name, address and securities positions disclosed to any companies, upon their request, in which I own securities
☐ YES, I do want ⎦ that are being held for me at Lehman Brothers Inc. ("Lehman") or any firm acting as a clearing broker for Lehman.

**D. Money Market Fund Agreement.** Lehman will be authorized (but not required) to invest or "sweep" available cash in your account into one of its money market funds *unless* you elect otherwise below. If you want to choose a particular money market fund or you do *not* want available cash swept into a money market fund, please indicate below. If you wish to discuss or change your choice of money market funds, please contact your Investment Representative.
*(Note to Wisconsin residents: You must indicate below specifically whether or not you wish to have a money market sweep for your account.)*
☐ NO, I do not want cash balances in my account automatically swept into a money market fund.
☐ YES, I want the cash balances in my account automatically swept into the fund of my choice.

**E. Joint Account With Rights Of Survivorship.** If the account has more than one owner, this agreement establishes a Joint Account With Rights of Survivorship. If you and the other account owners wish to establish a Tenancy in Common instead, each of you must execute a Joint Account Agreement As Tenants in Common in addition to this Client Agreement. *Note: Texas residents must execute a Texas Joint Account Supplement agreement (form 3682).*

**F. Margin Account Agreement.** Complete this section only if you accept the margin agreement described in paragraphs 16 through 19 of this agreement.
In consideration of your opening and maintaining one or more margin accounts on my behalf, I (we) hereby acknowledge that I (we) have read, understand and agree to the terms of a margin account contained in paragraphs 16 through 19 of this agreement. By signing this agreement, I (we) acknowledge that my (our) securities may be loaned to you or loaned out to others. If this is a joint account, all parties must sign.

| 1. Account Owner's Signature (Please sign in box) | Date | 2. Account Owner's Signature (Please sign in box) | Date |
|---|---|---|---|
| *signature* | 10.10.00 | | |
| 3. Account Owner's Signature (Please sign in box) | Date | 4. Account Owner's Signature (Please sign in box) | Date |
| | | | |

*Note for joint accounts: The Social Security Number of this account is the number of the client whose name appears first in the account title. Do not enter the number of any other account owner.*

| The Social Security Number or Tax Identification Number on Lehman Brothers' records is | Taxpayer Identification Number | | The Social Security Number or Tax Identification Number shown to the left is incorrect. The CORRECT number is | Taxpayer Identification Number |
|---|---|---|---|---|
| | | | | |

LBF 3025 (12/97) (PRT. 12/97)

1

## Exhibit 1

LB 00683

831-22788-18    P.2/2

OUT 10 '00  05:40PM

Form **W-8BEN**

Form (October 1998)

Department of the Treasury
Internal Revenue Service

### Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding

► Section references are to the Internal Revenue Code.  ► See separate instructions.
► Give this form to the withholding agent or payer. Do not send to the IRS.

OMB No. 1545-1621

| Do not use this form for: | Instead, use Form: |
|---|---|
| • A U.S. citizen or other U.S. person, including a resident alien individual . . . . . . . . . . . . . . . . | W-9 |
| • A foreign partnership (see instructions for exceptions) . . . . . . . . . . . . . . . . . . . | W-8ECI or W-8IMY |
| • A foreign government, international organization, foreign central bank of issue, tax-exempt organization, or private foundation claiming the applicability of section(s) 501(c), 892, 895, or 1443(b) . . . | W-8ECI or W-8EXP |
| • A person acting as an intermediary . . . . . . . . . . . . . . . . . . . . | W-8IMY |
| • A person claiming an exemption from U.S. withholding on income effectively connected with the conduct of a trade or business in the United States . . . . . . . . . . . . . . . | W-8ECI |

**Part I**    **Identification of Beneficial Owner (See instructions.)**

| 1 Name of individual or organization that is the beneficial owner | 2 Country of incorporation or organization |
|---|---|
| Irakli Glonti | |

3 Type of beneficial owner:  ☒ Individual  ☐ Corporation  ☐ Disregarded entity  ☐ Partnership  ☐ Trust  ☐ Estate
☐ Foreign government  ☐ International organization  ☐ Central bank of issue  ☐ Foreign tax-exempt organization

4 Permanent residence address (street, apt. or suite no., or rural route). Do not use a P.O. box.
I. Javachishvili  277 Tbilisi 380002

| City or town, state or province. Include postal code where appropriate. | Country (do not abbreviate) |
|---|---|
| Georgia | |

5 Mailing address (if different from above)

| City or town, state or province. Include postal code where appropriate. | Country (do not abbreviate) |
|---|---|
| | |

| 6 U.S. taxpayer identification number, if required (see instructions)  ☐ SSN or ITIN  ☐ EIN | 7 Foreign tax identifying number, if any (optional) |
|---|---|

8 Account number(s) (optional)

**Part II**    **Claim of Tax Treaty Benefits (if applicable)**

9 I certify that (check all that apply):

a ☐ The beneficial owner is a resident of Georgia within the meaning of the income tax treaty between the United States and that country.

b ☐ If required, the U.S. taxpayer identification number is stated on line 6 (see instructions).

c ☐ The beneficial owner is not an individual, derives the income for which the treaty benefits are claimed, and, if applicable, meets the requirements of the treaty article dealing with limitation on benefits (see instructions).

d ☐ The beneficial owner is not an individual, is claiming treaty benefits for dividends received from a foreign corporation or interest from a U.S. trade or business of a foreign corporation, and meets qualified resident status (see instructions).

e ☐ The beneficial owner is related to the person obligated to pay the income within the meaning of section 267(b) or 707(b), and will file Form 8833 if the amount subject to withholding received during a calendar year exceeds, in the aggregate, $500,000.

10 Special rates and conditions (if applicable—see instructions): The beneficial owner is claiming the provisions of Article . . . . . . . . . . of the treaty identified on line 9a above to claim a . . . . . . . . . . % rate of withholding on (specify type of income): . . . . . . . . . . . . . . . . . . . . . . .
Explain the reasons the beneficial owner meets the terms of the treaty article: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**Part III**    **Notional Principal Contracts**

11 ☐ I have provided or will provide a statement that identifies those notional principal contracts from which the income is not effectively connected with the conduct of a trade or business in the United States. I agree to update this statement as required.

**Part IV**    **Certification**

Under penalties of perjury, I declare that I have examined the information on this form and to the best of my knowledge and belief it is true, correct, and complete. I further certify under penalties of perjury that:

• I am the beneficial owner (or am authorized to sign for the beneficial owner) of all the income to which this form relates.
• The beneficial owner is a foreign person.
• The income to which this form relates is not effectively connected with the conduct of a trade or business in the United States.
• For broker transactions or barter exchanges, the beneficial owner is an exempt foreign person as defined in the instructions.
• Any income from a notional principal contract to which this form relates is not effectively connected with the conduct of a trade or business within the United States, and
• I am not a former citizen or long-term resident of the United States subject to section 877 (relating to certain acts of expatriation) or, if I am subject to section 877, I am nevertheless entitled to treaty benefits with respect to the amounts received.

**Sign Here** ►  [signature]    10.10.00

Signature of beneficial owner (or individual authorized to sign for beneficial owner)    Date    Capacity in which acting

For Paperwork Reduction Act Notice, see separate instructions.    Cat. No. 25047Z    Form **W-8BEN** (10-98)

**Exhibit 2**

LB 00685

MAR-25-02 MON 03:50 PM                    FAX NO.                    P. 01

# LEHMAN BROTHERS
**Customer Account Services**
P.O. Box 3760
New York, NY 10008-3760

## Client Agreement                    | CPI 3025 |

Before you sign this agreement, read it thoroughly and return this completed and signed agreement to Lehman Brothers at the address on the left side of this page. Subsequently you will receive literature containing important information about new accounts. Read the information carefully and retain it for future reference.

| 8 3 1 | 7 7 7 1 4 1 1 4 7 2 |

**Account Title / Name**

David Dateshidze

**Account Title / Name**

88 Genesee Boulevard

**Mailing Address**

Atlantic Beach NY 11509

**A. Tax Certification.** Under penalties of perjury, I certify that the number shown below (and to the left) is my correct taxpayer identification number or if not, then the number I have entered below (and to the right) is my correct tax identification number, and that I am not subject to backup withholding because (a) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of failure to report all interest or dividends, or (b) the IRS has notified me that I am no longer subject to backup withholding (see below), or (c) I am exempt from backup withholding (see below). Note: You must cross out (b) above if you are currently subject to backup withholding because of underreporting interest or dividends on your tax return. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

For those exempt from backup withholding (see instructions on page 4), write the word "EXEMPT" here: _____

**B. Client Acknowledgement.** I (we) hereby acknowledge that I (we) have read, understand and agree to the terms of this agreement. If this is a joint account, we further acknowledge that we have read, understand and agree to the terms of this agreement contained in paragraph 21. Note: Texas residents must execute a Texas Joint Account Supplement agreement (form 3082). I (We) acknowledge that I (we) have received a copy of the agreement which contains a pre-dispute arbitration clause at Paragraph 22; I (We) have read it and agree to its terms.

| 1. Account Owner's Signature (Please sign in box) | Date | 2. Account Owner's Signature (Please sign in box) | Date |
|---|---|---|---|
| r payzg | | | |
| 3. Account Owner's Signature (Please sign in box) | Date | 4. Account Owner's Signature (Please sign in box) | Date |
| | | | |

**C. Name Disclosure.** Please indicate your choice as to the release or withholding of your name, address and securities positions to issuing corporations.
☒ NO, I do not want / my name, address and securities positions disclosed to any companies, upon their request, in which I own securities
☐ YES, I do want ⌐ that are being held for me at Lehman Brothers Inc. ("Lehman") or any firm acting as a clearing broker for Lehman.

**D. Money Market Fund Agreement.** Interest will be authorized (but not required) to any interest or "swept" available cash in your account into one of the money market funds unless you elect otherwise below. If you want to choose a particular money market fund or you do not want available cash swept into a money market fund, please indicate below. If you wish to discuss or change your choice of money market funds, please contact your Investment Representative. (Note to Wisconsin residents: You must indicate below specifically whether or not you wish to have a money market sweep for your account.)
☐ NIL, I do not want cash balances in my account automatically swept into a money market fund.
☒ YES, I want the cash balances in my account automatically swept into the fund of my choice.

**E. Joint Account With Rights of Survivorship.** If the account has more than one owner, this agreement establishes a Joint Account With Rights of Survivorship. If you and the other account owners wish to establish a Tenancy in Common instead, each of you must execute a Joint Account Agreement As Tenants in Common in addition to this Client Agreement. Note: Texas residents must execute a Texas Joint Account Supplement agreement (form 3082).

**F. Margin Account Agreement.** Complete this section only if you accept the margin agreement contained in paragraphs 16 through 19 of this agreement. In consideration of your opening and maintaining one or more margin accounts on my behalf, I (we) hereby acknowledge that I (we) have read, understand and agree to the terms of a margin account contained in paragraphs 16 through 19 of this agreement. By signing this agreement, I (we) acknowledge that any (our) securities may be loaned to you or loaned out to others. If this is a joint account, all parties must sign.

| 1. Account Owner's Signature (Please sign in box) | Date | 2. Account Owner's Signature (Please sign in box) | Date |
|---|---|---|---|
| r payzg | | | |
| 3. Account Owner's Signature (Please sign in box) | Date | 4. Account Owner's Signature (Please sign in box) | Date |
| | | | |

Note for joint accounts: The Social Security Number of this account is the number of the client whose name appears first in the account title. Do not enter the number of any other account owner.

| The Social Security Number or Tax Identification Number on Lehman Brothers' records is | Taxpayer Identification Number    N/A | The Social Security Number or Tax Identification Number shown to the left is incorrect. The CORRECT number is | Taxpayer Identification Number |

BF 3025 (12/97) (PBT. 12/97)                    1

# Exhibit 3

LB 00687

831-77714-1-1-472

| Form **W-8BEN** | Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding | OMB No. 1545-1621 |
|---|---|---|
| (Rev. December 2000) Department of the Treasury Internal Revenue Service | ▶ Section references are to the Internal Revenue Code.  ▶ See separate instructions.  ▶ Give this form to the withholding agent or payer. Do not send to the IRS. | |

**Do not use this form for:** — **Instead, use Form:**

- A U.S. citizen or other U.S. person, including a resident alien individual . . . . . . . . . . . . . . . W-9
- A person claiming an exemption from U.S. withholding on income effectively connected with the conduct of a trade or business in the United States . . . . . . . . . . . . . . . . . . W-8ECI
- A foreign partnership, a foreign simple trust, or a foreign grantor trust (see instructions for exceptions) . . . W-8ECI or W-8IMY
- A foreign government, international organization, foreign central bank of issue, foreign tax-exempt organization, foreign private foundation, or government of a U.S. possession that received effectively connected income or that is claiming the applicability of section(s) 115(2), 501(c), 892, 895, or 1443(b) (see instructions) . . . . . . . . W-8ECI or W-8EXP

Note: *These entities should use Form W-8BEN if they are claiming treaty benefits or are providing the form only to claim they are a foreign person exempt from backup withholding.*

- A person acting as an intermediary . . . . . . . . . . . . . . . . . . . . . . . . W-8IMY

Note: *See instructions for additional exceptions.*

### Part I   Identification of Beneficial Owner (See instructions.)

| 1 Name of individual or organization that is the beneficial owner | 2 Country of incorporation or organization |
|---|---|
| DAVID DATESHIDZE | |

3 Type of beneficial owner: ☒ Individual  ☐ Corporation  ☐ Disregarded entity  ☐ Partnership  ☐ Simple trust
☐ Grantor trust  ☐ Complex trust  ☐ Estate  ☐ Government  ☐ International organization
☐ Central bank of issue  ☐ Tax-exempt organization  ☐ Private foundation

**4** Permanent residence address (street, apt. or suite no., or rural route). Do not use a P.O. box or in-care-of address.
AGMASHENEBELI 2/8

| City or town, state or province. Include postal code where appropriate. | Country (do not abbreviate) |
|---|---|
| TBILISI   380002 | REP. of GEORGIA |

**5** Mailing address (if different from above)
88 GENESEE BOULEVARD

| City or town, state or province. Include postal code where appropriate. | Country (do not abbreviate) |
|---|---|
| ATLANTIC BEACH NEW YORK 11509 | United States of America |

**6** U.S. taxpayer identification number, if required (see instructions)   ☐ SSN or ITIN  ☐ EIN
**7** Foreign tax identifying number, if any (optional)

**8** Reference number(s) (see instructions)

### Part II   Claim of Tax Treaty Benefits (if applicable)

**9** I certify that (check all that apply):

- a ☐ The beneficial owner is a resident of _____ within the meaning of the income tax treaty between the United States and that country.
- b ☐ If required, the U.S. taxpayer identification number is stated on line 6 (see instructions).
- c ☐ The beneficial owner is not an individual, derives the item (or items) of income for which the treaty benefits are claimed, and, if applicable, meets the requirements of the treaty provision dealing with limitation on benefits (see instructions).
- d ☐ The beneficial owner is not an individual, is claiming treaty benefits for dividends received from a foreign corporation or interest from a U.S. trade or business of a foreign corporation, and meets qualified resident status (see instructions).
- e ☐ The beneficial owner is related to the person obligated to pay the income within the meaning of section 267(b) or 707(b), and will file Form 8833 if the amount subject to withholding received during a calendar year exceeds, in the aggregate, $500,000.

**10** Special rates and conditions (if applicable—see instructions): The beneficial owner is claiming the provisions of Article _____ of the treaty identified on line 9a above to claim a _____ % rate of withholding on (specify type of income): _____.
Explain the reasons the beneficial owner meets the terms of the treaty article: _____.

### Part III   Notional Principal Contracts

**11** ☐ I have provided or will provide a statement that identifies those notional principal contracts from which the income is not effectively connected with the conduct of a trade or business in the United States. I agree to update this statement as required.

### Part IV   Certification

Under penalties of perjury, I declare that I have examined the information on this form and to the best of my knowledge and belief it is true, correct, and complete. I further certify under penalties of perjury that:

- I am the beneficial owner (or am authorized to sign for the beneficial owner) of all the income to which this form relates,
- The beneficial owner is not a U.S. person,
- The income to which this form relates is not effectively connected with the conduct of a trade or business in the United States or is effectively connected but is not subject to tax under an income tax treaty, and
- For broker transactions or barter exchanges, the beneficial owner is an exempt foreign person as defined in the instructions.

Furthermore, I authorize this form to be provided to any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make payments of the income of which I am the beneficial owner.

**Sign Here** ▶ _[signature]_ _____   03.26.2002
Signature of beneficial owner (or individual authorized to sign for beneficial owner)   Date (MM-DD-YYYY)   Capacity in which acting

For Paperwork Reduction Act Notice, see separate instructions.   Cat. No. 25047Z   Form **W-8BEN** (Rev. 12-2000)

**Exhibit 4**

LB 00688

P. 01/01

JUN-05-2003 THU 09:26 AM RBC DAIN RAUSCHER          FAX NO. 6126078731
   JUN 02 '03 13:04 FR RBC DAIN RAUSCHER     212 315 8984 TO 916126078484          P.01/01

MAY 19 '03 11:56 FR RBC DAIN RAUSCHER     212 315 8984 TO 901199532292566  P.02/06



## RBC
## Dain Rauscher
Member NYSE/SIPC

3444 3193 NF53

| 1101 | 3444 3193 53 | NF53 |
|---|---|---|
| Firm ID | Account Number | FC # |

**INVESTMENT ACCESS® ACCOUNT**
**APPLICATION, page 1 of 11**

**Account Owner Name** (as it should appear on your checks)
IRAKLI GLONTI

**Co-Owner Name(s)**

**Mailing Address**
88 GENESSEE BLVD
ATLANTIC BEACH, NY 11509

**Telephone Number** (include area code)
953 295 0777

**Mother's Maiden Name** (required for VISA Gold® Check Card)
CUKETIDZE

### CHECKING
What type of checks would you prefer?

☐ 200 standard-size checks
☐ 150 carbonless duplicate standard-size checks
☐ 600 3-to-a-page business-size checks with 3-ring cover
☒ None

Complete if you would like this information on your checks:

**Driver's License #**

**Telephone Number**
( )

### VISA Gold Check Card
Check the box below if you would like us to send you a VISA Gold Check Card:

☒ Yes, send VISA Gold Check Cards to the Account Owner and Co-Owner.   ☐ No VISA Gold Check Card at this time.

### Cash Investment Options
In which fund would you like us to sweep your idle cash?

438452
99 9977 7796

☒ Great Hall Prime Money Market Fund
☐ Great Hall U.S. Government Money Market Fund
☐ Great Hall Tax-Free Money Market Fund
☐ Great Hall Prime Institutional ($1 Million minimum balance required)
☐ Great Hall Institutional Tax-Free Money Market Fund ($1 Million minimum balance required )

☐ Treasury Cash Series
State Municipal Cash Trust:  ☐ Arizona  ☐ California
☐ Minnesota  ☐ New Jersey  ☐ New York  ☐ Virginia
☐ Credit Interest Program *
☐ None

* If you reside in WI, UT, or LA, or have your pension check deposited directly into your Investment Access Account, you cannot choose the Credit Interest Program

### Signatures

By signing this agreement, I acknowledge that:

I.  My Investment Access Account is subject to all terms and conditions included in the Investment Access Account Agreement.

II.  I understand that if my Investment Access Account is a custodial account established under either the Uniform Transfer to Minors Act or Uniform Gift to Minors Act, or a Fund Advisory Account, I may not utilize a margin account and that I cannot borrow against the securities held in my account.

III.  I have received a copy of the Investment Access Account Agreement and fee schedule, have had an opportunity to read them, and consent to all of their terms and conditions.

IV.  I am of legal age and I am not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock. In addition, I am not a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as a broker or as principal, in buying or selling securities, bills of exchange, acceptances or other forms of commercial paper. I will promptly notify you in writing if I am now or will become so employed. I also represent that no other person has an interest in any account or accounts with you.

V.  This Agreement has not been altered or revised in any manner by me, and I agree to be bound by its terms and conditions in their entirety.

VI.  RBC Dain Rauscher Inc. is entitled to rely upon the information provided in this form until written notice of its revocation is provided to us.

**All Account Owners must sign below:**

| Account Owner Signature | Date | Co-Owner Signature | Date |
|---|---|---|---|
| X | 5/19/03 | X | |

This Application must be accompanied by an Investment Access Account Agreement
**For Office Use Only**

| Financial Consultant Signature | Date | Branch Manager Signature |
|---|---|---|

** TOTAL PAGE.01 **

was signed per

Exhibit 5

RBC 0000013

MAY 19 '03 12:00 FR RBC DAIN RAUSCHER    212 315 6984 TO 901199532292566    P.06/06

# RBC
# Dain Rauscher

Member NYSE/SIPC

Firm ID: **11101**   Account Number: **045555605**   FC #: **NF63**

## ACCOUNT INFORMATION

☒ New Account    ☐ Update

**Account Type:** _____

| Name & Address | Name & Address II |
|---|---|
| DAVID DATESHIDZE<br>88 GENESSEE BLVD<br>ATLANTIC BEACH, NY 11509 | |

| SSN/EIN | Date of Birth | SSN/FIN | Date of Birth |
|---|---|---|---|
| | | | |

| Business Phone | Home Phone | Business Phone | Home Phone |
|---|---|---|---|
| 953 295 1237 | | | |

| Citizenship | Marital Status | US Citizen (Yes or No) | Relationship to Client |
|---|---|---|---|
| GEORGIAN | MARRIED | | |

| Employer (If retired, state previous employer) | Employer (If retired, state previous employer) |
|---|---|
| CDN LTD | |

| Address | Address |
|---|---|
| UZNADZE 2<br>TBILISI, GEORGIA | |

| Occupation | Occupation |
|---|---|
| VICE PRESIDENT | |

Is either party or immediate family member affiliated with or employed by another Broker/Dealer Member Firm? If yes, indicate firm and position. (Proper authorization must be obtained from the member firm.)

Is either party or immediate family member any of the following: director, shareholder with 10% or more of the stock, or policy making executive officer of a publicly traded company? If yes, indicate company and position.

If either party or immediate family member is an employee of an RBC Dain Rauscher Inc. member firm, indicate relationship here:

| Date Opened | Account Transferred From? | Source of Funds | J/T Source of Funds |
|---|---|---|---|
| ✓ | LEHMAN | ✓ | |

| Account Source | Referred By | # Years Known to FC | Annual Income (all sources) |
|---|---|---|---|
| | | 4 | $200,000 |

| Client's Investment Experience | # Years as an Investor | Liquid Assets | J/T Annual Income (all sources) |
|---|---|---|---|
| HIGH | 5 | $2 MILLION | |

| Net Worth (excluding home) | Estimated Tax Bracket (%) | # Dependents (including self) | Custodian's Account Number |
|---|---|---|---|
| $5 MILLION | | 3 | |

| Investment Objectives (Risk Tolerance) |
|---|
| GROWTH (AGGRESSIVE) |

| Initial Order Solicited? | Initial Transaction - list type, quantity and security (do not use symbol) |
|---|---|
| | |

| Trading Authorization on File? | Agent Name & Address (complete if account is operated by Power of Attorney or Trading Authorization) |
|---|---|
| | |

| Relationship to Client | Agent's Account # | Reason for Authority | Agent's Investment Experience |
|---|---|---|---|
| | | | |

| Financial Consultant Signature | Date | Branch Manager Approval | Date |
|---|---|---|---|
| | MAY 21 2003 | | |

Client Certification: I certify that the information provided on this form is true, correct and complete. All persons must sign if this is a joint account.

| Signature | Date | Signature | Date |
|---|---|---|---|
| X | 5/19/03 | X | |

rev. 11/01

## Exhibit 6

FROM : CDN Ltd.                                                          MAY 19 2003 09:03PM P7

MAY 19 '03 11:?? AP ?? ?AIN RA?CHER        212 315 64?? ?O ?#1:99532292566    P.05/06



**RBC**
**Dain Rauscher**

Member NYSE/SIPC

Firm ID  **2 4 5 5 6 0 5**  Account Number  **NP53**
FC #

## CLIENT STANDARD ACCOUNT AGREEMENT
### page 1 of 3

| Name & Address | Name & Address II |
|---|---|
| DAVID DATESHIDZE<br>88 GENESSEE BLVD<br>ATLANTIC BEACH, NY 11509 | |

- I understand that my Standard Account is subject to the terms and conditions of the Standard Account Agreement.
- I have received and reviewed a copy of the Standard Account Agreement.
- **THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE IN SECTION 18 ON PAGE 3.**
- This Agreement has not been amended, altered or revised in any way by me, and I agree to be bound by, and comply with, its terms and conditions in their entirety.
- Please sign and return the firm copy.

Client Certification: I certify that the information provided on this form is true, correct and complete. All persons must sign if this is a joint account.

| Client Signature | Date | Client Signature | Date |
|---|---|---|---|
| X *[signature]* | 5/19/03 | X | |

As used in this Agreement, the terms "you", "I", and "me" refer to the client of RBC Dain Rauscher Inc, who seeks to open a standard account agreement, and the term "RBC Dain" refers to RBC Dain Rauscher Inc. In consideration of your continuing or now and hereafter opening an account or accounts for the purchase and sale of securities and commodities for me, or in my name, I agree that all transactions with respect to any such account shall be subject to the following terms:

**1. Client Representations.**
(a) If you are an individual, you represent and warrant that you are of legal age, that no one except you has an interest in your account and you are not an employee of any exchange, or of a member firm of any exchange or the National Association of Securities Dealers, Inc. ("NASD"), any other self-regulatory organization; or of a bank, trust company or insurance company unless you have notified RBC Dain to that effect, and you will promptly notify RBC Dain if you become so employed.
(b) If you are a corporation, trust, partnership or other entity, you represent and warrant that you are duly formed and existing under the laws of your state or jurisdiction of formation, are qualified and (if you are a corporation) in good standing in every jurisdiction in which you do business; the person(s) designated to act for you have been duly authorized by all necessary and appropriate organizational action; such person or persons have full authority to execute this Agreement and all related documents on your behalf and to act for you in all matters regarding your account(s); RBC Dain may at all times rely on the fact of such authorization without any duty to investigate into either the authenticity or extent thereof of such authorization; and the party or parties designated as authorized signatories constitute(s) all of the proper and necessary authorized signatories.

**2. Client's Obligation.**
I agree to notify RBC Dain within ten (10) calendar days of receipt of my confirmation and/or statement of any trades or transactions that were executed without my authorization, any transactions which are not properly reflected on my confirmation or monthly statement or any other activities or omissions by RBC Dain, its agents or employees that I believe to be improper. Unless I object in writing within ten (10) calendar days of receipt of my confirmation or statement, confirmations of transactions and statements for my account shall be binding on me. Any communications regarding errors or misunderstandings with respect to my account should be addressed to the Branch Manager of the branch office where my account is maintained.

**3. Communications.**
Notices and communications may be sent to you at your address given above or at such other address as you may hereafter give RBC Dain in writing, and all communications so sent, whether by mail, telegraph, messenger or otherwise, shall be deemed given to you personally, whether actually received or not.

**4. Accuracy Of Account Information.**
I agree to notify RBC Dain in writing of any material change in my financial circumstances or any change in my investment objectives. I will address such notice to the Branch Manager of the branch office where my account is maintained. Any information I give RBC Dain or relating to this account will be subject to verification, and I authorize RBC Dain to obtain a credit report about me at any time and to share the credit report with any of RBC Dain's affiliates.

**5. RBC Dain "Financial Consultant" Title.**
The RBC Dain professionals who serve retail clients use the title of "Financial Consultant." This title was selected in recognition of the wide and expanding variety of financial products and services RBC Dain offers its clients. The term "Financial Consultant", as used by RBC Dain, is not intended to imply that its professionals are financial planners as the term is defined by certain state rules and regulations. RBC Dain professionals engage in providing a broad range of financial services and products some of which are offered by affiliated companies. These professionals maintain the necessary licenses required to offer financial products and services including the trading, distribution and sale of investments such as, for example, stocks, bonds, mutual funds, options and insurance and annuity contracts. RBC Dain's professionals are compensated by various means, including commissions or fixed fees, and their compensation may be affected by the overall value of the assets and any margin balances in the accounts which they service.

css 1102

# Exhibit 7

MAY 19 '03 11:58 FR HIX DAIN RAUSCHER    212 315 8984 TO 901199532292566    P.04/06



**RBC**
**Dain Rauscher**
Member NYSE/SIPC



Firm ID    Account Number    FC #

## OFFSHORE CLIENT CERTIFICATION

In signing this form, each of the undersigned certifies that all of the following conditions are satisfied:

- I am not a citizen of, or resident in the United States or its territories or possessions or Ireland.

- I will not transfer, directly or indirectly, any Shares or other interest (collectively, the "Shares"), or any interest therein (including, without limitation, any right to receive dividends or other distributions), of any money market fund the securities of which are intended to be distributed outside the United States and its territories and positions to a citizen, or resident of, or entity incorporated or chartered in the United States or its territories or possessions or Ireland, or to any other person or entity, unless the proposed transferee has made these certifications.

- I will not participate in any activity relating to the sale of Shares in the United States or its territories or possessions or Ireland.

- I have not obtained any funds to effect the purchase of these Shares from a U.S. person, or in a manner which is deemed to be illegal by the laws of the country of which I am a citizen, or in which I am a resident, or those of the United States or of its territories or possessions or Ireland.

- I understand and agree that the fund has not been and will not be registered under the United States Investment Company Act of 1940, as amended, and that the Shares have not been and will not be registered under the United States Securities Act of 1933, as amended, or the securities laws of any State of the United States or Ireland.

- I will ensure that I am outside of the United States or Ireland at the time that I place an order to purchase Shares.

- I will be certain to read prospectuses and fully understand the procedures and regulations set forth within them before purchasing offshore funds.

- I will immediately notify both my investment advisor and the fund should I at any time become a citizen of, or resident in the United States (as defined by the United States Internal Revenue Code) or Ireland.

| Print Name | Print Name |
|---|---|
| DAVID DATESHIDZE | |
| Client Signature X | Date 5/19/03 | Client Signature X | Date |

## RBC Dain Rauscher Financial Consultant Certification

In signing this form, the undersigned Financial Consultant certifies that all of the following statements are true:

- I have verified that each of the client(s) signing above is a non-resident alien as defined by the United States Internal Revenue Code, and understand that if the client does not meet the definition of a non-resident alien, this investment is a violation of the Securities Act of 1933 and its amendments.

- I understand that any inappropriate use of offshore funds by the client, which results from my failure to adequately exercise set procedures, may result in the loss of my license as a Financial Consultant and the termination of employment with RBC Dain Rauscher Incorporated.

- I understand that I may accept and act on investment instructions and directions only on the condition that the client is outside of the United States, and its territories and possessions or Ireland at the time that the client issues such instructions or directions.

| Financial Consultant Signature X | Date MAY 21/2003 |
|---|---|

Please fax to Client Account Services at (612) 607-8900

FOR OFFICE USE

**Client Account Services**

| Accepted By: | Date |
|---|---|

PAGE.01                                                          MAY 29 '03 16:45

MAY 29 '03 14:43 FR RBC DAIN RAUSCHER    212 315 8984 TO 901199532292566    P.01/21

## RBC Dain Rauscher

Member NYSE/SIPC

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

Firm ID          Account Number          FC #

# CLIENT MARGIN ACCOUNT
## AGREEMENT AND APPLICATION, page 1 of 3

THIS AGREEMENT CONSISTS OF THREE PAGES. I HAVE READ AND UNDERSTAND THE TERMS OF THIS AGREEMENT.

BY SIGNING THIS AGREEMENT I ACKNOWLEDGE THAT:

2. I HAVE RECEIVED A COPY OF THIS AGREEMENT

4. I HAVE RECEIVED THE MARGIN DISCLOSURE STATEMENT.
THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE ON PAGE 3 AT PARAGRAPH 13

Name & Address of Account

DAVID DATESHIDZE
88 GENESSEE BLVD
ATLANTIC BEACH, NY 11509

| Client Signature (or authorized person if applicable) | Date | Signature of Second Party (if a joint account) | Date |
|---|---|---|---|
| X | 5/29/03 | X | |

DAVID DATESHIDZE

| Title, if applicable (e.g., President, Partner, Trustee, Custodian) | Title, if applicable (e.g., President, Partner, Trustee, Custodian) |
|---|---|

953 295 1237

| Occupation  VICE PRESIDENT | Occupation |
|---|---|
| Employer  CDN LTD | Employer |

| Financial Consultant Signature | For office use only | |
|---|---|---|
| | Date  5/29/03 | Branch Manager Signature    Date |

TO: RBC Dain Rauscher Inc. (RBC Dain)

1. **STATUS OF RBC Dain AS BROKER.** In purchasing or selling securities and commodities for me you shall act as my agent unless you notify me in writing prior to the settlement date or make the necessary disclosure on the confirmation that you are acting as a dealer for your own account or as an agent for some other party.

2. **STATUS OF RBC Dain AS A SELF-CLEARING FIRM.** I understand that RBC Dain is a self-clearing broker dealer and as such carries my account and clears and settles all trades in my account. As used in this agreement, the terms "you", "your" and other terms having a similar meaning shall be deemed to refer to RBC Dain.

provisions of the Securities Exchange Act of 1934 and the Commodity Exchange Act, to all rules and regulations of the Securities and Exchange Commission, the Board of Governors of the Federal Reserve System and the Commodity Futures Trading Commission. They also shall be subject to the rules and regulations, customs and usages of the exchange or market where my orders are executed, as the same may be amended or supplemented from time to time

4. **DESIGNATION OF ORDERS/SHORT SALES.** Every order I give you for the sale or purchase of securities or commodities contemplates an actual sale or purchase. I will deliver to you securities or commodities to cover all my sale orders and will receive and pay for on your demand all securities and commodities covered by my purchase orders. If I fail to deliver to you any securities or commodities which you have sold pursuant to my order, you are authorized to borrow the securities or commodities necessary to make delivery thereof, and in the event of your inability to borrow or otherwise obtain the securities or commodities ... I shall be responsible for any losses sustained by me as a result of short sale strategies that were terminated due to unavailable shares.

continued on page # 2

NYB 3/03

** TOTAL PAGE.01 **

# Exhibit 9

RBC 0000445

# RBC
# Dain Rauscher
**Member NYSE/SIPC**



\* | 1 1 0 1 | 3 4 4 4 3 1 9 3 | N F 5 3 |
Firm ID    Account Number    FC #



## ACCOUNT INFORMATION
☐ New Account    ☒ Update

**Account Type:** INDIVIDUAL

| Name & Address<br>**IRAKLI GLONTI<br>88 GENESSEE BLVD<br>ATLANTIC BEACH NY 11509** | | Name & Address II | |
|---|---|---|---|
| SSN/EIN | Date of Birth<br>**04/27/1962** | SSN/EIN | Date of Birth |
| Business Phone<br>**953-295-1237** | Home Phone | Business Phone | Home Phone |
| Citizenship<br>~~ZIMBABWE~~ GEORGIA | Marital Status<br>**MARRIED** | US Citizen (Yes or No) | Relationship to Client |
| Employer (If retired, state previous employer)<br>**CDN** | | Employer (If retired, state previous employer) | |
| Address<br>**UZNADZE 2**<br><br>**TBIUSI, GEORGIA** | | Address | |
| Occupation<br>**PRESIDENT** | | Occupation | |

Is either party or immediate family member affiliated with or employed by another Broker/Dealer Member Firm? If yes, indicate firm and position. *(Proper authorization must be obtained from the member firm.)*

Is either party or immediate family member any of the following: director, shareholder with 10% or more of the stock, or policy making executive officer of a publicly traded company? If yes, indicate company and position.

If either party or immediate family member is an employee of an RBC Dain Rauscher Inc. member firm, indicate relationship here:

| Date Opened<br>**05/23/2003** | Account Transferred From? | Source of Funds<br>**ACAT** | J/T Source of Funds |
|---|---|---|---|
| Account Source<br>**TRANSFER IN** | Referred By<br>**NONE** | # Years Known to FC<br>**8** | Annual Income (all sources)<br>**$500,000 - 999,999** |
| Client's Investment Experience<br>**EXTENSIVE** | # Years as an Investor<br>**10** | Liquid Assets<br>~~$3,000,000~~ 5mill | J/T Annual Income (all sources) |
| Net Worth (excluding home)<br>~~$3,000,000~~ 10mi | Estimated Tax Bracket (%)<br>**16-28%** | # Dependents (including self)<br>**4** | Custodian's Account Number |
| Investment Objectives (risk tolerance)<br>**AGGRESSIVE GROWTH** | | | |
| Initial Order Solicited? | Initial Transaction - list type, quantity and security (do not use symbol)<br>**PENDING** | | |

| Trading Authorization on File? | Agent Name & Address (complete if account is operated by Power of Attorney or Trading Authorization) | | |
|---|---|---|---|
| Relationship to Client | Agent's Account # | Reason for Authority | Agent's Investment Experience |

| Financial Consultant's Signature | Date<br>6/18/03 | Branch Manager Approval | Date<br>6/ /03 |
|---|---|---|---|

**Client Certification:** I certify that the information provided on this form is true, correct and complete. All persons must sign if this is a joint account.

| Signature<br>X | Date<br>6/1/03 | Signature<br>X | Date |
|---|---|---|---|

nac 11/01

Firm Copy

Exhibit 10

RBC 0000001

# RBC
# Dain Rauscher
Member NYSE/SIPC

\* | 1 | 1 | 0 | 1 | 3 | 4 | 4 | 4 | 3 | 1 | 9 | 3 | N | F | 5 | 3 |

Firm ID    Account Number    FC #

## CLIENT STANDARD ACCOUNT AGREEMENT
page 1 of 3

| Name & Address | Name & Address II |
|---|---|
| IRAKLI GLONTI<br>88 GENESSEE BLVD<br>ATLANTIC BEACH  NY  11509 | |

- I understand that my Standard Account is subject to the terms and conditions of the Standard Account Agreement.
- I have received and reviewed a copy of the Standard Account Agreement.
- THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE IN SECTION 18 ON PAGE 3.
- This Agreement has not been amended, altered or revised in any way by me, and I agree to be bound by, and comply with, its terms and conditions in their entirety.
- Please sign and return the firm copy.

**Client Certification:** I certify that the information provided on this form is true, correct and complete. All persons must sign if this is a joint account.

| Client Signature | Date | Client Signature | Date |
|---|---|---|---|
| X | 6/7/03 | X | |

As used in this Agreement, the terms "you", "I", and "me" refer to the client of RBC Dain Rauscher Inc. who seeks to open a standard account agreement, and the term "RBC Dain" refers to RBC Dain Rauscher Inc. In consideration of your continuing or now and hereafter opening an account or accounts for the purchase and sale of securities and commodities for me, or in my name, I agree that all transactions with respect to any such account shall be subject to the following terms:

### 1. Client Representations.
(a) If you are an individual, you represent and warrant that you are of legal age, that no one except you has an interest in your account and you are not an employee of any exchange or of a member firm of any exchange or the National Association of Securities Dealers, Inc. ("NASD"), any other self-regulatory organization, or of a bank, trust company, or insurance company unless you have notified RBC Dain to that effect, and you will promptly notify RBC Dain if you become so employed.
(b) If you are a corporation, trust, partnership or other entity, you represent and warrant that you are duly formed and existing under the laws of your state or jurisdiction of formation and are qualified and (if you are a corporation) in good standing in every jurisdiction in which you do business; the person(s) designated to act for you have been duly authorized by all necessary and appropriate institutional action; such person or persons have full authority to execute this Agreement and all related documents on your behalf and to act for you in all matters regarding your account(s); RBC Dain may at all times rely on the fact of such authorization without any duty to investigate into either the authenticity or extent thereof of such authorization; and the party or parties designated as authorized signatories constitute(s) all of the proper and necessary authorized signatories.

### 2. Client's Obligation.
I agree to notify RBC Dain within ten (10) calendar days of receipt of my confirmation and/or statement of any trades or transactions that were executed without my authorization, any transactions which are not properly reflected on my confirmation or monthly statement or any other activities or omissions by RBC Dain, its agents or employees that I believe to be improper. Unless I object in writing within ten (10) calendar days of receipt of my confirmation or statement, confirmations of transactions and statements for my account shall be binding on me. Any communications regarding errors or misunderstandings with respect to my account should be addressed to the Branch Manager of the branch office where my account is maintained.

### 3. Communications.
Notices and communications may be sent to you at your address given above or at such other address as you may hereafter give RBC Dain in writing, and all communications so sent, whether by mail, telegraph, messenger or otherwise, shall be deemed given to you personally, whether actually received or not.

### 4. Accuracy Of Account Information.
I agree to notify RBC Dain in writing of any material change in my financial circumstances or any change in my investment objectives. I will address such notice to the Branch Manager of the branch office where my account is maintained. Any information I give RBC Dain on or relating to this account will be subject to verification, and I authorize RBC Dain to obtain a credit report about me at any time and to share the credit report with any of RBC Dain's affiliates.

### 5. RBC Dain "Financial Consultant" Title.
The RBC Dain professionals who serve retail clients use the title of "Financial Consultant". This title was selected in recognition of the wide and expanding variety of financial products and services RBC Dain offers its clients. The term "Financial Consultant", as used by RBC Dain, is not intended to imply that its professionals are financial planners as the term is defined by certain state rules and regulations. RBC Dain professionals engage in providing a broad range of financial services and products some of which are offered by affiliated companies. These professionals maintain the necessary licenses required to offer financial products and services including the trading, distribution and sale of investments such as, for example, stocks, bonds, mutual funds, options and insurance and annuity contracts. RBC Dain's professionals are compensated by various means, including commissions or fixed fees, and their compensation may be affected by the overall value of the assets and any margin balances in the accounts which they service.

Firm Copy

## Exhibit 11

RBC 0000002



**RBC**
**Dain Rauscher**
Member NYSE/SIPC

| 1 | 1 | 0 | 1 | | 3 | 4 | 4 | 4 | 3 | 1 | 9 | 3 | | N | F | 5 | 3 |
Firm ID    Account Number    FC #

## CLIENT ACCOUNT INFORMATION

☐ New Account    ☒ Update    Account Type **INDIVIDUAL**

### ACCOUNT OWNERSHIP INFORMATION

| Name and Address of Primary Account Owner/Trustee | Name and Address of Joint Owner *(if joint account)* |
|---|---|
| **IRAKLI GLONTI**<br>**88 GENESSEE BLVD**<br>**ATLANTIC BEACH NY 11509** | |

| Date of Birth | SSN/EIN | Date of Birth | SSN/EIN |
|---|---|---|---|
| **04/27/1962** | | | |

| Home Phone | Business Phone | Home Phone | Business Phone |
|---|---|---|---|
| | **953-295-1237** | | |

| Citizenship *Republic of Georgia* | Marital Status **MARRIED** | Citizenship | Relationship to Primary Client |
|---|---|---|---|

| Occupation **PRESIDENT** | | Occupation | |
|---|---|---|---|

| Employer Name and Address *(If retired, state previous employer.)* | Employer Name and Address *(If retired, state previous employer.)* |
|---|---|
| **CDN**<br>**UZNADZE 2**<br>**TBIUSI, GEORGIA** | *CDN FOR IRAKLI GLONTI*<br>*IVANE JAVACHISHVILI 27*<br>*TBILISI, GEORGIA*<br>*380002* |

### ADDITIONAL OWNERS (IF APPLICABLE)

| Name of Additional Account Owners/Trustees | Name of Additional Account Owners/Trustees |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

### ADDITIONAL CLIENT INFORMATION

Is either party or an immediate family member affiliated with or employed by another Broker/Dealer member firm? _____ Yes    X No

If yes, indicate the firm and position.
*(Proper authorization must be obtained from the member firm.)*

Is either party or an immediate family member any of the following: director, shareholder with 10% or more of the stock, or a policy-making executive officer of a publicly traded company? _____ Yes    X No

If yes, indicate company and position.

Is the account owner(s) or an immediate family member of the account owner(s) an employee of RBC Dain Rauscher? _____ Yes    X No

Is the account traded by a third party? _____ Yes    X No
If yes, is there a Trading Authorization or Power of Attorney on file? _____ Yes _____ No

Indicate name and address of third party agent.

Page 1 of 3

NonBW mac 8/03

**Exhibit 12**

RBC 0000008

## CLIENT ACCOUNT INFORMATION (Continued)

| 1 | 1 | 0 | 1 | | 3 | 4 | 4 | 4 | 3 | 1 | 9 | 3 | | N | F | 5 | 3 |
Firm ID · Account Number · FC #

### FINANCIAL INFORMATION

If any information is inaccurate, please correct and initial your changes before returning.

**Annual Income** *(all sources)*

- ☐ Under $50,000
- ☐ $50,000 - 99,999
- ☐ $100,000 - 249,999
- ☐ $250,000 - 499,999
- ☒ $500,000 - 999,999
- ☐ $1,000,000 +
- ☐ Client Refused *(additional documentation required)*

**Joint Owner's Annual Income** *(all sources)*

- ☐ Under $50,000
- ☐ $50,000 - 99,999
- ☐ $100,000 - 249,999
- ☐ $250,000 - 499,999
- ☐ $500,000 - 999,999
- ☐ $1,000,000 +
- ☐ Client Refused *(additional documentation required)*

**Net Worth - excluding home** *(combined if joint account)*

- ☐ Under $100,000
- ☐ $100,000 - 249,999
- ☐ $250,000 - 499,999
- ☐ $500,000 - 999,999
- ☐ $1,000,000 - 2,999,999
- ☒ $3,000,000 +
- ☐ Client Refused *(additional documentation required)*

**Liquid Assets**

- ☐ Under $100,000
- ☐ $100,000 - 249,999
- ☐ $250,000 - 499,999
- ☐ $500,000 - 999,999
- ☐ $1,000,000 - 2,999,999
- ☒ $3,000,000 +
- ☐ Client Refused *(additional documentation required)*

**Number of Years as an Investor**

10

**Client's Investment Experience**

☐ Average   ☒ Extensive   ☐ None

**Number of Dependents** *(including self)*

4

**Estimated Tax Bracket**

☐ 0 - 15%   ☒ 16 - 28%   ☐ 29 - 36%   ☐ 36% +

**Money Market Choice**

GREAT HALL PRIME FUND

**Investment Objective** *(choose one)*

- ☐ **Preservation of Principal/Income** - Focus is on preservation of principal and income. *Very conservative.*
  Note: For Advisory accounts, the investment objective for this category is Income.

- ☐ **Balanced/Conservative Growth** - Focus is on generating current income and/or long-term capital growth. *Conservative.*
  Note: For Advisory accounts, the investment objective for this category is *either* Balanced or Conservative Growth.

- ☐ **Growth** - Focus is on generating long-term capital growth. *Moderate.*

- ☒ **Aggressive Growth** - Focus is on generating growth and/or income with a willingness to assume a high level of risk. *Aggressive.*

- ☐ **Speculation** - Focus is on generating highest potential growth and/or income with a willingness to assume highest level of risk. *Very aggressive.*

### ACCOUNT SERVICES

You have selected the following service(s) for your account:

_____ **Standard Checking** - Gives you convenient, limited access to the cash in your account through check writing privileges. *(Not permitted in retirement accounts.)*

__X__ **Investment Access** - Gives you easy access to the assets in your account through check writing, ATM and/or Visa Gold® Check Card privileges, as well as the ability to move money electronically, pay bills electronically, and much more. *(Not permitted in retirement accounts.)*

_____ **ACH** - Allows you to move money electronically between your RBC Dain Rauscher account and other outside accounts, putting your cash to work for you faster.

__X__ **Margin** - Allows you to borrow funds against eligible securities in your RBC Dain Rauscher account for both investment and non-investment purposes. Interest is charged on the amount borrowed. Certain risks are associated with this type of account. See the Margin Disclosure Statement in the enclosed *Client Agreement. (Not permitted in custodial, estate, or retirement accounts.)*

Non BW mac2 8/03

RBC 0000009

**CLIENT ACCOUNT INFORMATION (Continued)**

Firm ID `1 1 0 1`  Account Number `3 4 4 4 3 1 9 3`  FC # `N F 5 3`

## W-9 INFORMATION

**Part I - Awaiting TIN**

☐ Check the box if you are presently applying for a Taxpayer Identification Number

**Part II - Exempt payees**

☐ Check the box if you are exempt from backup withholding and information reporting

## CLIENT ACKNOWLEDGEMENT AND AGREEMENT

1. I confirm that I am at least 18 years of age and of full legal age in my state of residence.

2. I acknowledge that I have received the *Client Agreement* and agree to abide by its terms as currently in effect or as they may be amended from time to time.

3. I UNDERSTAND THIS ACCOUNT IS BEING GOVERNED BY THE PRE-DISPUTE arbitration clause appearing on page 6 of the *Client Agreement* at Section 19.

**For Margin Accounts Only:**

4. I understand that my securities may be loaned to you and to others as provided under SEC Rule 15c 3-3 and other applicable law.

5. I acknowledge that I have received and read the margin information, including the Margin Disclosure Statement, in the enclosed *Client Agreement.*

## SUBSTITUTE W-9 CERTIFICATION

Certification: Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

By entering your name below, you signify that you have read, met, and agreed to all terms and conditions above.

The IRS does not require my consent to any provision of this document other than the certifications required to avoid backup withholding.

## SIGNATURES

Primary Account Owner/Trustee Signature   Date  13. 11. 03.

Joint Tenant/Additional Trustee Signature   Date

Joint Tenant/Additional Trustee Signature (if applicable)   Date

Financial Consultant Signature   Date  11/19/3

Joint Tenant/Additional Trustee Signature (if applicable)   Date

Branch Manager Approval   Date

Non BW mac3 8/03

RBC 0000010

**RBC**
**Dain Rauscher**

Member NYSE/SIPC

| * | 1 1 0 1 | 3 4 4 4 3 1 9 3 | N F 5 3 |
|---|---|---|---|
| | Firm ID | Account Number | FC # |

## CLIENT MARGIN ACCOUNT
## AGREEMENT AND APPLICATION, page 1 of 3

THIS AGREEMENT CONSISTS OF THREE PAGES. I HAVE READ AND UNDERSTAND THE TERMS OF THIS AGREEMENT.

**BY SIGNING THIS AGREEMENT I ACKNOWLEDGE THAT:**

1. MY SECURITIES MAY BE LOANED TO YOU OR LOANED TO OTHERS AS PROVIDED UNDER SEC RULE 15c3-3 AND OTHER APPLICABLE LAW.
2. I HAVE RECEIVED A COPY OF THIS AGREEMENT.
3. THIS AGREEMENT HAS NOT BEEN ALTERED OR REVISED IN ANY MANNER BY ME, AND I AGREE TO ABIDE BY ITS TERMS AND CONDITIONS AND THEIR ENTIRETY.
4. I HAVE RECEIVED THE MARGIN DISCLOSURE STATEMENT.
**THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE ON PAGE 3 AT PARAGRAPH 13**

Name & Address of Account
**IRAKLI GLONTI**
**88 GENESSEE BLVD**
**ATLANTIC BEACH NY 11509**

| Client Signature (or authorized person if applicable) | Date | Signature of Second Party (if a joint account) | Date |
|---|---|---|---|
| X | 5/29/03 | X | |

| Printed Name from Signature Above | Printed Name from Signature Above |
|---|---|
| IRAKLI GLONTI | |

| Title, if applicable (e.g., President, Partner, Trustee, Custodian) | Title, if applicable (e.g., President, Partner, Trustee, Custodian) |
|---|---|

| Telephone Number, Including Area Code | Telephone Number, Including Area Code |
|---|---|
| 953 295 1237 | |

| Occupation | Occupation |
|---|---|
| **PRESIDENT** | |

| Employer | Employer |
|---|---|
| **CDN** | |

*For office use only*

| Financial Consultant Signature | Date | Branch Manager Signature | Date |
|---|---|---|---|
| | 5/29/03 | | 6/18/03 |

**TO: RBC Dain Rauscher Inc. (RBC Dain)**

In consideration of your continuing or now and hereafter opening an account or accounts for the purchase and sale of securities and commodities for me, or in my name, I agree that all transactions with respect to any such account shall be subject to the following terms:

1. **STATUS OF RBC Dain AS BROKER.** In purchasing or selling securities and commodities for me you shall act as my agent unless you notify me in writing prior to the settlement date or make the necessary disclosure on the confirmation that you are acting as a dealer for your own account or as an agent for some other party.

2. **STATUS OF RBC Dain AS A SELF-CLEARING FIRM.** I understand that RBC Dain is a self-clearing broker dealer and as such carries my account and clears and settles all trades in my account. As used in this agreement, the terms "you", "your" and other terms having a similar meaning shall be deemed to refer to RBC Dain.

3. **APPLICABLE RULES AND STATUTES.** All transactions made for me under this agreement shall be subject, where applicable, to the provisions of the Securities Exchange Act of 1934 and the Commodity Exchange Act, to all rules and regulations of the Securities and Exchange Commission, the Board of Governors of the Federal Reserve System and the Commodity Futures Trading Commission. They also shall be subject to the rules and regulations, customs and usages of the exchange or market where my orders are executed, as the same may be amended or supplemented from time to time.

4. **DESIGNATION OF ORDERS/SHORT SALES.** Every order I give you for the sale or purchase of securities or commodities contemplates an actual sale or purchase. I will deliver to you securities or commodities to cover all my sale orders and will receive and pay for on your demand all securities and commodities covered by my purchase orders. If I fail to deliver to you any securities or commodities which you have sold pursuant to my order, you are authorized to borrow the securities or commodities necessary to make delivery thereof, and in the event of your inability to borrow or otherwise obtain the commodities or securities, I shall be responsible for any loss you may sustain thereby. You shall have a reasonable time to deliver to me any securities or commodities which you have purchased for my account and for which I have paid in full. I understand that in the case of a short sale (delivery of borrowed shares), the short transaction may at any time be terminated by purchasing back the shares if the borrowed shares are recalled by the lender or otherwise become unavailable. Furthermore, I understand that you will not be responsible for any losses sustained by me as a result of short sale strategies that were terminated due to unavailable shares.

*continued on page # 2*
Firm Copy

mrg 3/03

## Exhibit 13

RBC 0000007



**RBC**
**Dain Rauscher**

Member NYSE/SIPC



| * | 1 1 0 1 | 2 4 5 5 5 6 0 5 | N F 5 3 |
|---|---|---|---|
| | Firm ID | Account Number | FC Number |

## CLIENT ACCOUNT INFORMATION

☐ New Account    ☒ Update    Account Type **INDIVIDUAL**

### ACCOUNT OWNERSHIP INFORMATION

| Name and Address of Primary Account Owner/Trustee | Name and Address of Joint Owner (*if joint account*) |
|---|---|
| **DAVID DATESHIDZE**<br>**88 GENESSEE BLVD**<br>**ATLANTIC BEACH  NY  11509-0000** | |

| Date of Birth<br>**04/15/1958** | SSN/EIN | Date of Birth | SSN/EIN |
|---|---|---|---|
| Home Phone<br>**953-295-1237** | Business Phone<br>**953-295-1237** | Home Phone | Business Phone |
| Citizenship<br>**GG** | Marital Status<br>**MARRIED** | Citizenship | Relationship to Primary Client |
| Occupation<br>**VICE PRESIDENT** | | Occupation | |
| Employer Name and Address (*If retired, state previous employer.*)<br>**CDN LTD**<br>**UZNADZE 2**<br>**TBILISI, GEORGIA** | | Employer Name and Address (*If retired, state previous employer.*) | |

### ADDITIONAL OWNERS (IF APPLICABLE)

| Name of Additional Account Owners/Trustees | Name of Additional Account Owners/Trustees |
|---|---|
| _____ | _____ |
| _____ | _____ |

### ADDITIONAL CLIENT INFORMATION

Is either party or an immediate family member affiliated with or employed by another Broker/Dealer member firm? _____ Yes  **X**  No

If yes, indicate the firm and position.
(*Proper authorization must be obtained from the member firm.*)

Is either party or an immediate family member any of the following: director, shareholder with 10% or more of the stock, or a policy-making executive officer of a publicly traded company? _____ Yes  **X**  No

If yes, indicate company and position.

Is the account owner(s) or an immediate family member of the account owner(s) an employee of RBC Dain Rauscher? _____ Yes  **X**  No

Is the account traded by a third party? _____ Yes  **X**  No
If yes, is there a Trading Authorization or Power of Attorney on file?
_____ Yes    _____ No

Indicate name and address of third party agent.

mac 1/04

**Exhibit 14**

RBC 0000447

CLIENT ACCOUNT INFORMATION (Continued)     *  | 1 | 1 | 0 | 1 |   | 2 | 4 | 5 | 5 | 6 | 0 | 5 |   | N | F | 5 | 3 |

Firm ID     Account Number     FC Number

## FINANCIAL INFORMATION

If any information is inaccurate, please correct and initial your changes before returning.

### Annual Income *(all sources)*
- ☐ Under $50,000
- ☐ $50,000 - 99,999
- ☒ $100,000 - 249,999
- ☐ $250,000 - 499,999
- ☐ $500,000 - 999,999
- ☐ $1,000,000 +
- ☐ Client Refused *(additional documentation required)*

### Joint Owner's Annual Income *(all sources)*
- ☐ Under $50,000
- ☐ $50,000 - 99,999
- ☐ $100,000 - 249,999
- ☐ $250,000 - 499,999
- ☐ $500,000 - 999,999
- ☐ $1,000,000 +
- ☐ Client Refused *(additional documentation required)*

### Net Worth - excluding home *(combined if joint account)*
- ☐ Under $100,000
- ☐ $100,000 - 249,999
- ☐ $250,000 - 499,999
- ☐ $500,000 - 999,999
- ☐ $1,000,000 - 2,999,999
- ☒ $3,000,000 +
- ☐ Client Refused *(additional documentation required)*

### Liquid Assets
- ☐ Under $100,000
- ☐ $100,000 - 249,999
- ☐ $250,000 - 499,999
- ☐ $500,000 - 999,999
- ☒ $1,000,000 - 2,999,999
- ☐ $3,000,000 +
- ☐ Client Refused *(additional documentation required)*

### Number of Years as an Investor
5

### Estimated Tax Bracket
- ☐ 0 - 10%
- ☐ 11 - 15%
- ☐ 16 - 25%
- ☒ 26 - 28%
- ☐ 29 - 33%
- ☐ 33% +

### Client's Investment Experience
- ☐ None
- ☐ Limited
- ☐ Average
- ☒ Extensive

### Number of Dependents *(including self)*
3

### Money Market Choice
NONE

### Initial Order Solicited
- ☐ Yes
- ☐ No

### Transaction
PENDING

### Quantity

### Security Name

### Investment Objective *(choose one)*

- ☐ Preservation of Principal/Income - Focus is on preservation of principal and income. *Very conservative.*
  Note: For Advisory accounts, the investment objective for this category is Income.

- ☐ Balanced/Conservative Growth - Focus is on generating current income and/or long-term capital growth. *Conservative.*
  Note: For Advisory accounts, the investment objective for this category is *either* Balanced or Conservative Growth.

- ☐ Growth - Focus is on generating long-term capital growth. *Moderate.*

- ☒ Aggressive Growth - Focus is on generating growth and/or income with a willingness to assume a high level of risk. *Aggressive.*

- ☐ Speculation - Focus is on generating highest potential growth and/or income with a willingness to assume highest level of risk. *Very aggressive.*

## ACCOUNT SERVICES

You have selected the following service(s) for your account:

_____ Standard Checking - Gives you convenient, limited access to the cash in your account through check writing privileges. *(Not permitted in retirement accounts.)*

_____ Investment Access - Gives you easy access to the assets in your account through check writing, ATM and/or Visa Gold® Check Card privileges, as well as the ability to move money electronically, pay bills electronically, and much more. *(Not permitted in retirement accounts.)*

_____ ACH - Allows you to move money electronically between your RBC Dain Rauscher account and other outside accounts, putting your cash to work for you faster.

__X__ Margin - Allows you to borrow funds against eligible securities in your RBC Dain Rauscher account for both investment and non-investment purposes. Interest is charged on the amount borrowed. Certain risks are associated with this type of account. See the Margin Disclosure Statement in the enclosed *Client Agreement. (Not permitted in custodial, estate, or retirement accounts.)*

RBC 0000448

CLIENT ACCOUNT INFORMATION (Continued)      *  | 1 | 1 | 0 | 1 |  | 2 | 4 | 5 | 5 | 6 | 0 | 5 |  | N | F | 5 | 3 |
                                                    Firm ID              Account Number              FC Number

## W-9 INFORMATION

**Part I - Awaiting TIN**

☐  Check the box if you are presently applying for a Taxpayer Identification Number

**Part II - Exempt payees**

☐  Check the box if you are exempt from backup withholding and information reporting

## CLIENT ACKNOWLEDGEMENT AND AGREEMENT

1.  I confirm that I am at least 18 years of age and of full legal age in my state of residence.

2.  I acknowledge that I have received the *Client Agreement* and agree to abide by its terms as currently in effect or as they may be amended from time to time.

3.  **I UNDERSTAND THIS ACCOUNT IS BEING GOVERNED BY THE PRE-DISPUTE** arbitration clause appearing on page 6 of the *Client Agreement* at Section 19.

**For Margin Accounts Only:**

4.  I understand that my securities may be loaned to you and to others as provided under SEC Rule 15c 3-3 and other applicable law.

5.  I acknowledge that I have received and read the margin information, including the Margin Disclosure Statement, in the enclosed *Client Agreement*.

## SUBSTITUTE W-9 CERTIFICATION

**Certification: Under penalties of perjury, I certify that:**

1.  The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2.  I am not subject to backup withholding because (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3.  I am a U.S. person (including a U.S. resident alien).

You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

By entering your name below, you signify that you have read, met, and agreed to all terms and conditions above.

The IRS does not require my consent to any provision of this document other than the certifications required to avoid backup withholding.

## SIGNATURES

| | |
|---|---|
| *(signature)*                               6/23/4 | |
| Primary Account Owner/Trustee Signature         Date | Joint Tenant/Additional Trustee Signature          Date |
| | |
| Joint Tenant/Additional Trustee Signature (if applicable)   Date | Joint Tenant/Additional Trustee Signature (if applicable)   Date |
| *(signature)*                               6/10/4 | *(signature)*                               6/10/04 |
| Financial Consultant Signature                   Date | Branch Manager Approval                          Date |

Page 3 of 3

Firm Copy

mac3 1/04

RBC 0000449

 **RBC Dain Rauscher**
Member NYSE/SIPC

 \* 1 1 0 1   2 4 5 5 5 6 0 5   N F 5 3
Firm ID        Account Number        FC #



## OFFSHORE CLIENT CERTIFICATION

In signing this form, each of the undersigned certifies that all of the following conditions are satisfied:

- I am not a citizen of, or resident in the United States or its territories or possessions or Ireland.

- I will not transfer, directly or indirectly, any Shares or other interest (collectively, the "shares"), or any interest therein (including, without limitation, any right to receive dividends or other distributions), of any money market fund the securities of which are intended to be distributed outside the United States and its territories and positions to a citizen, or resident of, or entity incorporated or chartered in the United States or its territories or possessions or Ireland, or to any other person or entity, unless the proposed transferee has made these certifications.

- I will not participate in any activity relating to the sale of Shares in the United States or its territories or possessions or Ireland.

- I have not obtained any funds to effect the purchase of these Shares from a U.S. person, or in a manner which is deemed to be illegal by the laws of the country of which I am a citizen, or in which I am a resident, or those of the United States or of its territories or possessions or Ireland.

- I understand and agree that the fund has not been and will not be registered under the United States Investment Company Act of 1940, as amended, and that the Shares have not been and will not be registered under the United States Securities Act of 1933, as amended, or the securities laws of any State of the United States or Ireland.

- I will ensure that I am outside of the United States or Ireland at the time that I place an order to purchase Shares.

- I will be certain to read prospectuses and fully understand the procedures and regulations set forth within them before purchasing offshore funds.

- I will immediately notify both my investment advisor and the fund should I at any time become a citizen of, or resident in the United States (as defined by the United States Internal Revenue Code) or Ireland.

| Print Name  David Dateshidze | Print Name |
|---|---|
| Client Signature  X  O.N.Te          Date  6/23/4 | Client Signature  X          Date |

## RBC Dain Rauscher Financial Consultant Certification

In signing this form, the under signed Financial Consultant certifies that all of the following statements are true:

- I have verified that each of the client(s) signing above is a non-resident alien as defined by the United States Internal Revenue Code, and understand that if the client does not meet the definition of a non-resident alien, this investment is a violation of the Securities Act of 1933 and its amendments.

- I understand that any inappropriate use of offshore funds by the client, which results from my failure to adequately exercise set procedures, may result in the loss of my license as a Financial Consultant and the termination of employment with RBC Dain Rauscher Incorporated.

- I understand that I may accept and act on investment instructions and directions only on the condition that the client is outside of the United States, and its territories and possessions or Ireland at the time that the client issues such instructions or directions.

| Financial Consultant Signature  X | Date  6/10/04 |
|---|---|

**· · · Please fax to Client Account Services at (612) 607-8900**

FOR OFFICE USE

## Client Account Services

| Accepted By: | Date |
|---|---|

Firm Copy

o/c 9/02

Exhibit 15

RBC 0000451



**RBC Dain Rauscher**
Member NYSE/SIPC



Firm ID   ☐ ☐ ☐    Account Number   ☐ ☐ ☐ ☐ ☐ ☐ ☐   FC #   ☐ ☐ ☐

Date: 10-13-04

## INVESTMENT ACCESS® ACCOUNT
### APPLICATION, page 1 of 2

### Account Owner Information

**Account Owner Name** *(as it should appear on your checks)*
DAVID DATESHIDZE

**Co-Owner Name(s)**

**Mailing Address**
88 Genessee Blvd
Atlantic Beach NY
11509-0000

**Telephone Number** *(include area code)*

### Checking

**What type of checks would you prefer?**

☐ Single checks with cover - free      ☒ None

☐ Duplicate checks with cover - free

☐ 3-to-a-page checks with binder - $80.00

☐ 3-to-a-page Laser/Ink Jet checks - $104.00

*Complete items below if you would like this information on your checks*

Telephone Number *(include area code)*

Driver's License #

### VISA Gold® Check Card

**Check the box below if you would like us to send you a VISA Gold Check Card:**
☒ Yes, send VISA Gold Check Cards to the Account Owner and Co-Owner.
☐ No VISA Gold Check Card at this time.

**Mother's Maiden Name** *(required for VISA Gold Check Card)*
BENDUKIDZE

### Cash Investment Options
*To which fund would you like us to sweep your idle cash?*

☐ Tamarack
☐ Tamarack U.S. Government Money Market Fund
☐ Tamarack Tax-Free Money Market Fund
☐ Tamarack Prime Institutional ($1 Million minimum balance required)
☐ Tamarack Institutional Tax-Free Money Market Fund
    ( $1 Million minimum balance required )
* If you reside in WI, UT, or LA, or have your pension check deposited directly into your Investment Access Account, you cannot choose the Credit Interest Program.

☐ Treasury Cash Series

State Municipal Cash Trust:  ☐ Arizona  ☐ California
☐ Minnesota  ☐ New Jersey  ☐ New York  ☐ Virginia
☐ Credit Interest Program *
☐ None

### Signatures

By signing this agreement, I acknowledge that:

I.   My Investment Access Account is subject to all terms and conditions included in the Investment Access Account Agreement.

II.  I understand that if my Investment Access Account is a custodial account established under either the Uniform Transfer to Minors Act or Uniform Gift to Minors Act, or a Fund Advisory Account, I may not utilize a margin account and that I cannot borrow against the securities held in my account.

III. I have received a copy of the Investment Access Account Agreement and fee schedule, have had an opportunity to read them, and consent to all of their terms and conditions.

IV.  I am of legal age and I am not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock. In addition, I am not a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as a broker or as principal, in buying or selling securities, bills of exchange, acceptances or other forms of commercial paper. I will promptly notify you in writing if I am now or will become so employed. I also represent that no other person has an interest in my account or accounts with you.

V.   This Agreement has not been altered or revised in any manner by me, and I agree to be bound by its terms and conditions in their entirety.

VI.  RBC Dain Rauscher Inc. is entitled to rely upon the information provided in this form until written notice of its revocation is provided to us.

**All Account Owners must sign below:**

| Account Owner Signature | Date | Co-Owner Signature | Date |
|---|---|---|---|
| X | 10/11/04 | X | |

**This Application must be accompanied by an Investment Access Account Agreement**

### For Office Use Only

| Financial Consultant Signature | Date | Branch Manager Signature | Date |
|---|---|---|---|
| | 10/11/04 | | 10/11/04 |

Please see next page for additional services available to you.
Return to Document & Imaging Services

Turn over

800-422-7435

## Exhibit 16

RBC 0000453