**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DR. IRAKLI GLONTI AND<br>DAVID DATESHIDZE,<br><br>                        Plaintiffs,<br><br>v.<br><br>LEHMAN BROTHERS, INC. AND<br>RBC DAIN RAUSCHER, INC.,<br><br>                    Defendants. | Civil Action No.  07-CV-10975<br><br>Hon. Colleen McMahon, U.S.D.J.<br><br>**Oral Argument Requested**<br>**Document Electronically Filed** |

---

### REPLY BRIEF OF RBC DAIN RAUSCHER, INC. IN  FURTHER SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDING

---

 

BRESSLER, AMERY & ROSS
A Professional Corporation
17 State Street
New York, New York 10004
(212) 425-9300
Attorneys for Defendant
RBC Dain Rauscher, Inc.

On the Brief:

     Brian F. Amery (BFA 7144)

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT .................................................................................. 1

LEGAL ARGUMENT ................................................................................................. 1

POINT I:  PLAINTIFFS HAVE NOT SATISFIED THEIR BURDEN OF
PRESENTING SUFFICIENT CREDIBLE EVIDENCE SHOWING
THERE IS A TRIABLE ISSUE. ....................................................................... 1

POINT II:   PLAINTIFFS CANNOT ESCAPE ARBITRATION BY
CLAIMING THE ACCOUNT AGREEMENTS THEY SIGNED ARE
VOID. ................................................................................................................ 2

POINT III:   EVEN IF THIS COURT ENTERTAINS PLAINTIFFS'
ALLEGATIONS THAT THE ACCOUNT AGREEMENTS ARE VOID,
THESE CHALLENGES MUST STILL BE DECIDED THROUGH
ARBITRATION. ................................................................................................ 5

POINT IV:   PLAINTIFFS' CLAIMS ARE WITHIN THE SCOPE OF
THE ARBITRATION AGREEMENT. .............................................................. 14

POINT V:   PLAINTIFFS' DECLARATIONS ARE INVALID. ...................... 14

CONCLUSION ............................................................................................................ 15

## TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE**

### Federal Cases

Adams v. Suozzi, 433 F.3d 220, 227 (2d Cir. 2005) .................................................................. 3

Baldeo v. Darden Rests., Inc., No. 04-CV-2185 (JG), 2005 WL 44703, *4 (E.D.N.Y. 2005) ...... 7

Bar-Ayal v. Time Warner Cable Inc., No. 03-CV-9905 (KMW), 2006 WL 2990032
    (S.D.N.Y. 2006) Cir. 2001).................................................................................................. 4

Bensadoun v. Jobe-Riat, 316 F. 3d 171, 175 (2d Cir. 2003) ......................................................... 14

Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46, 448, 126 S. Ct.1204 (2006)4, 5

Chandler v. Coughlin, 763 F.2d 110, 113-14 (2d Cir. 1985).......................................................... 15

Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 67-68 (2d Cir. 2005) ............................................. 3

Fox Int'l Relations v. Fiserv Sec., Inc., 418 F. Supp. 2d 718, 721 (E.D.P.A. 2006) .................. 4, 5

Generale Bank v. Wassel, 779 F. Supp. 310 (S.D.N.Y. 1991) ...................................................... 10

Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 845-46 (2d Cir.1987)............................ 6

Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004).................................. 6, 7

Grassmere, Inc., 116 F.3d 28, 31-32 (2d Cir. 1997).............................................................. 11, 12

Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226
    (2d Cir. 2001)................................................................................................................... 3

Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 31-32 (2d Cir. 1997).................... 11, 12

Loo v. Prudential Ins. Co. of Am., No. 03-CV-8409 (DLC), 2004 WL 3017013 *8
    (S.D.N.Y. 2004)................................................................................................................ 8

Manning v. Energy Conversion Devices, Inc., 833 F.2d 1096, 1103 (2d Cir. 1987) ................. 2, 6

Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 181 (2d Cir. 2007).............. 8

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625, 105 S. Ct. 3346
    (1985)................................................................................................................................ 1

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983). ................................................................................................................. 1, 14

Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995) (1983). ......................................................................................................................... 2

Prima Paint Corp. v. Flood & Conklin Mfg. Co., 338 U.S. 395, 402, 87 S. Ct. 1801 (1967).. 3, 12

Rosen v. Waldman, No. 93-CV-225 (PKL), 1993 WL 403974 (S.D.N.Y. 1993)................. 12, 13

Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 195 (S.D.N.Y. 2006) ........................... 3, 4, 6, 12

Rush v. Oppenheimer, 681 F. Supp. 1045, 1052 (S.D.N.Y. 1988) .............................................. 13

Smith Barney Shearson, Inc. v. DeFries, No. 94-CV-0020 (WK), 1994 WL 455178 (S.D.N.Y. 1994) ..................................................................................................... 12, 13

Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 32 (2d Cir. 2001) .................... 3

Tapia v. Banque Indosuez, No. 97-CV-6318 (JSM), 1999 WL 4948 (S.D.N.Y. 1999)........... 9, 10

## State Cases

Advanta Bus. Servs. Corp. v. Colon, 4 Misc. 3d 117, 119 782 N.Y.S. 2d 502, 504 (2004) .......... 8

Metzger v. Aetna Ins. Co., 227 N.Y. 411, 416, 125 N.E. 814 (1920) ............................................ 6

People v. Banchs, 173 Misc.2d 415, 661 N.Y.S.2d 450 (N.Y. Crim. Ct. 1997) ......................... 15

People v. Camacho, 185 Misc.2d 31, 711 N.Y.S.2d 283, 288 (N.Y. Crim. Ct. 2000) ................. 15

## Federal Statutes

9 U.S.C. § 2 (2007) ............................................................................................................... 2, 3, 5

9 U.S.C. § 4 ............................................................................................................................... 2, 6

Federal Rule of Civil Procedure 56(e) ................................................................................ 14, 15

## PRELIMINARY STATEMENT

Defendant RBC Dain Rauscher, Inc. submits this Reply Brief to compel the claims of Plaintiffs Dr. Irakli Glonti and David Dateshidze to arbitration and stay this action pending completion of the arbitration.   Plaintiffs admit signing Client Standard Account Agreements ("Account Agreement") that mandate the controversies alleged in the Complaint be sent to arbitration.   Plaintiffs' alleged defenses to the arbitrability of their claims all concern the Account Agreements as a whole which, under United States Supreme Court precedent, must be decided in arbitration.   Even if this Court were to entertain Plaintiffs' challenges, Plaintiffs simply cannot come forward with sufficient, credible evidence to avoid their obligations to arbitrate the alleged controversies with RBC.   Accordingly, this Court should find that Plaintiffs are bound by the Account Agreements they signed and should order Plaintiffs' claims to arbitration and stay this action pending completion of the arbitration.

## LEGAL ARGUMENT

### POINT I

### PLAINTIFFS HAVE NOT SATISFIED THEIR BURDEN OF PRESENTING SUFFICIENT CREDIBLE EVIDENCE SHOWING THERE IS A TRIABLE ISSUE.

The Federal Arbitration Act ("FAA") reflects a strong federal policy towards upholding contractual agreements to arbitrate.  See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625, 105 S. Ct. 3346 (1985).  "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983).

1

To sufficiently place the making of a contract in question to avoid arbitration, the party opposing arbitration bears the burden of showing there is a triable issue.  As stated in <u>Oppenheimer & Co., Inc. v. Neidhardt</u>, 56 F.3d 352, 358 (2d Cir. 1995):

> It is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends.  If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried.

<u>See also</u> <u>Manning v. Energy Conversion Devices, Inc.</u>, 833 F.2d 1096, 1103 (2d Cir. 1987) ("a party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of this claim in order to precipitate the trial contemplated by 9 U.S.C. § 4").

## POINT II

### PLAINTIFFS CANNOT ESCAPE ARBITRATION BY CLAIMING THE ACCOUNT AGREEMENTS THEY SIGNED ARE VOID.

Despite the lengthy Declarations and Brief submitted by Plaintiffs in opposition to RBC Dain Rauscher's motion to compel arbitration, two determinative factors remain inescapable: 1) both Plaintiffs acknowledge signing the Account Agreements on which RBC Dain Rauscher moves to compel arbitration, and 2) Plaintiffs' basis for attempting to void the Account Agreements, whether it be grounded in alleged misrepresentations causing them to sign the Account Agreements or an inability to understand the Account Agreements, challenges the Agreements as a whole, and not the arbitration provisions therein.  Accordingly, Plaintiffs' challenge is an issue for the arbitrators to decide.

Section 2 of the FAA is the primary substantive provision of the FAA.  9 U.S.C. § 2 (2007).  It provides, in part, that a written arbitration provision "in any maritime transaction or a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save

upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Whether a dispute is arbitrable under the FAA involves two questions: 1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, 2) whether the dispute sought to be arbitrated falls within the scope of the arbitration agreement. Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001).

In Prima Paint Corp. v. Flood & Conklin Mfg. Co., 338 U.S. 395, 402, 87 S. Ct. 1801 (1967), the Supreme Court held as a matter of law that arbitration clauses are separable from the contracts in which they are embedded. Thus, if a claim goes to the arbitration clause itself – "an issue which goes to the making of the agreement to arbitrate" – the court can adjudicate the claim. Id. at 403-04. However, if the claim goes to the contract as a whole, that claim cannot be addressed by the court and must go to arbitration instead. Id. at 404. Conceding that their allegations are directed to the Account Agreements and not the arbitration provisions therein, Plaintiffs seek a trial on the issue of arbitrability by claiming the Account Agreements themselves are void because they never manifested assent thereto. Plaintiffs' argument is essentially that the Prima Paint severability rule has no application where the entire agreement is alleged to be void. (Pls.' Opp'n at 13-21).

After Prima Paint, the Second Circuit made a distinction between a contract that was void and one that was voidable, holding that "the former would vitiate any arbitration clause but the latter would still require arbitration." Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 195 (S.D.N.Y. 2006); See Adams v. Suozzi, 433 F.3d 220, 227 (2d Cir. 2005); Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 67-68 (2d Cir. 2005); and Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 32 (2d Cir. 2001). Plaintiffs rely upon these same cases in their Opposition in support of their argument that because the Account Agreements are void, so must be the arbitration provisions contained therein. (Pls.' Opp'n at 14-15).

3

However, in <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 445-46, 448, 126 S. Ct. 1204 (2006), the United States Supreme Court rejected this distinction, holding that even where the party opposing arbitration claims that the agreement as a whole is void (as do Plaintiffs here), "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator." This principle "must include contracts that later prove to be void." <u>Id.</u> at 448. Indeed, this Court has applied <u>Buckeye</u> to reject an argument that arbitration could not be compelled because the contract containing the arbitration provision was void. <u>See</u> <u>Rubin</u>, 457 F. Supp. 2d at 195, 196.[1]

<u>Buckeye</u> stated that the issue of a contract's validity is different from the issue of whether an agreement between the parties was ever concluded. <u>Buckeye</u>, 546 U.S. at 444. However, here, plaintiffs do not claim that they never signed the Account Agreements (indeed, they expressly admit that they did), nor do they allege they lacked mental capacity to execute the Account Agreements. Rather, they claim the Account Agreements that they signed are void because they allegedly could not understand the terms of the agreements and because the agreements were fraudulently misrepresented as a "mere formality." <u>See generally</u>, Pls. Opp'n at 19-20.

In <u>Fox Int'l Relations v. Fiserv Sec., Inc.</u>, 418 F. Supp. 2d 718, 721 (E.D.P.A. 2006), the Court applied <u>Buckeye</u> in rejecting an argument that a claim of fraud in the factum takes a case outside the <u>Prima Paint</u> doctrine because such a claim renders a contract void. Plaintiff contended that the contract was void and the arbitration provision therein unenforceable because certain alleged misrepresentations about the transfer of funds to open the account were so fundamental to the contract that they constituted fraud in the factum. <u>Id.</u> at 721. The court noted that <u>Buckeye</u> affirmed <u>Prima Paint</u>'s "dichotomous categorization while noting the existence of a third type of

---

[1] <u>But see</u> <u>Bar-Ayal v. Time Warner Cable Inc.</u>, No. 03-CV-9905 (KMW), 2006 WL 2990032 (S.D.N.Y. 2006) (discussing the void versus voidable distinction post- <u>Buckeye</u>).

challenge: challenges based on 'whether any agreement between the alleged obligor and oblige was ever concluded.'" Id. at 723 (citing Buckeye, 546 U.S. at 444). The court defined these types of challenges as questions of signatory power, and stated:

> Thus, after the Supreme Court's Buckeye decision, it appears that there are three categories of challenges to arbitration provisions. First, if a challenge is specifically to the arbitration provision, it must be decided by a court. Second, if a challenge is to the contract as a whole, it must go to arbitration. Third and finally, if a challenge is to a party's signatory power to the contract, it must be decided by a court.

Id. at 723-24.

Considering plaintiff's argument that the alleged misrepresentations were so fundamental that they amounted to fraud in the factum and therefore voided the entire contract, the Fox Court found that this challenge went to the validity of the contract as a whole – the second type of challenge – and therefore must be submitted to arbitration. Id. at 724. Similarly, here, Plaintiffs raise no issue of signatory power, and expressly admit that they signed the Account Agreements (Pls.' Opp'n at 2; Decl. of Glonti at 3; Decl. of Dateshidze at ¶ 18). They now seek to void that to which they have already objectively manifested assent. Whatever the grounds for attack, it cannot be disputed that Plaintiffs challenge the Account Agreements as a whole, and as such, these challenges must be decided at arbitration.

## POINT III

### EVEN IF THIS COURT ENTERTAINS PLAINTIFFS' ALLEGATIONS THAT THE ACCOUNT AGREEMENTS ARE VOID, THESE CHALLENGES MUST STILL BE DECIDED THROUGH ARBITRATION.

No sufficient grounds exist at law or equity to revoke the validity and enforceability of the Account Agreements and the arbitration provisions contained therein. See 9 U.S.C. § 2. In determining whether a valid agreement to arbitrate exists, a court must apply "generally accepted

5

principles of contract law." Rubin, 457 F. Supp. 2d at 195 (internal citations omitted). Application thereof shows that Plaintiffs' challenges are for the arbitrator to decide.

Plaintiffs' allegations that they never saw the entirety of the Account Agreements, could not understand the terms of the Account Agreements, and that the Account Agreements were presented to them as a "mere formality," even if true, do not entitle them to a trial of the arbitrability of the agreement as contemplated by 9 U.S.C. § 4. Simply stated, Plaintiffs' allegations in this regard are legally deficient and lack sufficient evidentiary facts that raise any genuine issues of material fact as contemplated by Manning, 833 F.2d at 1103.

## A.    Plaintiffs Admit They Signed the Account Agreements.

Despite Plaintiffs' attempts to obfuscate the issue, the fact remains that each admits to signing the Account Agreements upon which RBC Dain Rauscher now seeks to compel arbitration. (Pls.' Opp'n at 2; Decl. of Glonti at 3; Decl. of Dateshidze at ¶ 18). Accordingly, Plaintiffs' litany of case law concerning forged documents and their allegations concerning other documentation that may have been forged or that they may never have seen is wholly irrelevant to the instant matter.

## B.    Plaintiffs Manifested Assent to the Arbitration Agreements.

A party must be bound by the provisions of a contract that he signs, unless he shows special circumstances that would relieve him of such an obligation. Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 845-46 (2d Cir.1987); Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) ("[I]n the absence of fraud or other wrongful act on the part of another contracting party, a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them.'") (citing Metzger v. Aetna Ins. Co., 227 N.Y. 411, 416, 125 N.E. 814 (1920).

In Gold, plaintiff argued that he should not be bound to arbitrate employment discrimination claims because the arbitration clause resided in a document incorporated by

reference in the arbitration agreement itself, which he had not read. The Second Circuit noted "even if Gold did not understand the form or had questions about the arbitration clause or the rules . . . the burden was upon him to have his concerns addressed before signing [the agreement]." Id. at 149. See also Baldeo v. Darden Rests., Inc., No. 04-CV-2185 (JG), 2005 WL 44703, *4 (E.D.N.Y. 2005) (failure to read a document incorporated by reference into a valid arbitration agreement does not generally allow avoidance of the incorporated document).

Under these precedents, Plaintiffs cannot argue they never manifested assent to the Account Agreements because they never saw the arbitration provisions. Plaintiffs are conclusively presumed to have known and assented to the contents of the Account Agreements, especially given that the first page of the Account Agreement – which they admit seeing and signing – contains the following language emblazoned directly above the signature line in bold-faced type:

- **I understand that my Standard Account is subject to the terms and conditions of the Standard Account Agreement.**

- **I have received and reviewed a copy of the Standard Account Agreement.**

- **THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE IN SECTION 18 ON PAGE 3.**

(Defs.' Mot. to Compel, Franchella Certification, Ex. A, B; Decl. of Glonti Exhibit 11; Decl. of Dateshidze Exhibit 4).

Neither can Plaintiffs claim they never manifested assent to the Account Agreements by claiming that page 1 (the page each of them signed) of these agreements was given to them "blank" and with "none of the information reported" in its current format. (Pls.' Opp'n at 10-11). The most cursory review of the documents shows that the only information to be reported thereon is the signatures of Plaintiffs and their names and addresses. (Defs.' Mot. to Compel, Franchella Certification, Ex. A, B; Decl. of Glonti Exhibit 11; Decl. of Dateshidze Exhibit 4). Plaintiffs admittedly signed the Account Agreements (thus supplying this missing information), and, even if

the section for their names and addresses remained blank after they affixed their signatures, such an omission can hardly be said to be material to the formation of the Account Agreements.

**C.    As Sophisticated Businessmen, Plaintiffs Cannot Credibly Claim Their Alleged Difficulties with the English Language Evidences a Lack of Assent to the Arbitration Agreements, nor Can They Claim to Have Relied upon any Alleged Representations Made by RBC or its Personnel.**

Persons "illiterate in the English language are not automatically excused from complying with the terms of a contract which they sign simply because they could not read it. Such persons must make a reasonable effort to have the contract read to them." Loo v. Prudential Ins. Co. of Am., No. 03-CV-8409 (DLC), 2004 WL 3017013 *8 (S.D.N.Y. 2004). See also Advanta Bus. Servs. Corp. v. Colon, 4 Misc. 3d 117, 119 782 N.Y.S. 2d 502, 504 (2004) (people that lack proficiency in English must prove reasonable efforts to have a document read and explained or account for why they did not take these steps if they want to avoid the presumption of knowledge of the contents of the document). Here, Plaintiffs must be deemed to have understood and acknowledged the existence of the signed contract's terms, notwithstanding their alleged linguistic limitations. They have provided no evidence that they made a "reasonable effort" to have the Account Agreements read to them and have presented no credible account for why they did not do so.

Even if they have a limited grasp of the English language, Plaintiffs cannot evade their duties to inform themselves of the Account Agreements' terms by claiming reliance upon RBC Dain Rauscher or its personnel. This is especially true because Plaintiffs are sophisticated businessmen, and New York courts remain generally skeptical of claims of reliance made by sophisticated businessmen. See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 181 (2d Cir. 2007).

Plaintiff Glonti earned his medical degree and later his doctorate in Philosophy, founded an oil products and refining company in Georgia, founded a telecommunications company in Georgia, owned a 50% share in a Moscow medical clinic, and is still associated with various worldwide business ventures. (Compl. at 16-21; Decl. of Glonti at ¶¶ 16-18). Before he even opened an investment account with Smith Barney in approximately 2000, he had several million dollars to place with an investment firm in the United States (Decl. of Glonti at ¶ 35). Indeed, Glonti had investment experience prior to signing the Account Agreement to open his account in May of 2003 – he maintained accounts in various "investment firms" in Switzerland as well as at Smith Barney and Lehman Brothers. (Compl. at ¶22; Decl. of Glonti at ¶¶ 22, 36-55).

Plaintiff Dateshidze is also an experienced and sophisticated businessman, holding a degree in engineering, being previously involved in a gasoline supply company in Georgia, serving as head of the municipality's technical department, and founding a wine trading venture in Georgia. (Compl at ¶¶26-28; Decl. of Dateshidze at ¶¶ 4-6). He too maintained accounts in Switzerland as well as at Lehman Brothers prior to signing his Account Agreement with RBC. (Decl. of Dateshidze at ¶ 12). Collectively, these sophisticated businessmen invested an alleged $4 million at Lehman Brothers and RBC Dain Rauscher (Decl. of Glonti at ¶ 2).

Surely, men as intelligent and accomplished as they are, who had prior investment experience, who had this large of an amount of money to invest, and who must have had familiarity with contractual obligations in the course of their other business dealings, would have taken reasonable steps to understand the terms of the Account Agreements they signed. Not doing so constitutes negligence on the part of plaintiffs.

Similar to the case at bar, Tapia v. Banque Indosuez, No. 97-CV-6318 (JSM), 1999 WL 4948 (S.D.N.Y. 1999) involved a wealthy and sophisticated foreign businessman who claimed ignorance of the information contained in documents he signed because he did not speak

English. The Court found it incumbent upon him to do more than just rely on the bald assertions and promises of his investment advisors. "Before he invested over two and one-half million dollars, reasonable diligence required him to read the . . . documents." Id. at *2. Likewise, this Court held in Generale Bank v. Wassel, 779 F. Supp. 310 (S.D.N.Y. 1991) that a sophisticated real estate investor to be conclusively bound to a contract he signed without reading. The court noted "[i]f the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case, the writing binds him." Id. at 315. The Wassel court noted further, "even if the forum selection clause were in 'alien language,' the Court would find that he acted negligently in signing the document without further inquiry." Id. Dismissing the investor's argument that he relied upon the representations of a salesman that he was signing the signature page of a financing application, this Court found the investor negligent for so relying. Id.

As shown by these cases, regardless of any representations allegedly made, Plaintiffs had an independent duty to inquire as to the terms of the documents they signed. Their alleged difficulties with English neither vitiate this duty nor their assent to the terms of the Account Agreements. Plaintiff Glonti admits, "I accepted Foerster's representations without question because he had befriended me and he never gave me any reason to question his word. And furthermore, I believed him because he was employed by what I believed to be reputable United States investment firms." (Decl. of Glonti at ¶ 5). Plaintiffs cannot be permitted to ignore their own independent duties. Even if the Account Agreements were written in "alien" language, Plaintiffs were negligent in signing them without further inquiry, especially given the amount of money involved, and their level of sophistication in business matters. Reasonable diligence requires more of even unsophisticated individuals.

Plaintiffs' assertion of reliance lacks credibility given their business acumen and intelligence. It seems incredible that Plaintiff Glonti seeks to invalidate the Account Agreement he signed by claiming that he blindly accepted Foerster's representations (dating as far back as three and a half years before Glonti opened an account at RBC Dain Rauscher) that he would explain everything necessary for Glonti to know, that everything he said would be truthful, and that there was no reason to ever question what he said. (Decl. of Glonti at ¶ 7). Further, someone like Glonti would surely know something was amiss if presented with a blank document and instructed "only to pay attention to the space provided for their signatures" as he alleges. (Pls.' Opp'n at 9). Additionally, it is questionable how Glonti, who allegedly still has trouble with the English language, managed to communicate with Foerster given all the time the two spent together, and how he submits such a lengthy declaration in English without a certification that he had it translated into his native language. Indeed, the entirety of Plaintiffs' submissions make them seem almost child-like in nature, which clearly cannot be the case.[2]

Finally, as a matter of policy, and as noted in <u>Tapia</u>, allowing Plaintiffs to void the Account Agreements would create a dangerous precedent of discouraging investors from reading documents they sign, with hopes of later arguing they were misled. <u>Tapia</u>, 1999 WL 4948 at *2.

## D.  **Plaintiffs' Allegation that Foerster Represented the Account Agreements as a Mere Formality Does not Constitute Fraud in the Execution.**

Fraud in the factum or execution occurs where there is a "misrepresentation as to the character or essential terms of a proposed contract," and a party signs without knowing or having a "reasonable opportunity to know of its character or essential terms." <u>Hetchkop v. Woodlawn at Grassmere, Inc.</u>, 116 F.3d 28, 31-32 (2d Cir. 1997) (internal quotations omitted). Such a fraud

---

[2] In fact, the misrepresentations alleged by Plaintiffs sound more like an alleged scheme by Foerster to fraudulently induce Plaintiffs from the outset of the investment relationship in 2000

11

causes a party to believe that the act which he does is something other than it actually is. Id. at 32. To prevail, a party must show excusable ignorance of the contents of the writing signed. Id.

Cases involving fraud in the execution most often occur where one party surreptitiously substitutes one document for another. Id. Here, Foerster's alleged representation that the Account Agreements were a "mere formality" do not fall into this category, as Plaintiffs admit signing the actual document to which these representations were allegedly made.

Even if Foerster characterized the Account Agreements as a "mere formality", this does not constitute fraud in the execution. In Smith Barney Shearson, Inc. v. DeFries, No. 94-CV-0020 (WK), 1994 WL 455178 (S.D.N.Y. 1994), this Court was presented with the nearly identical case of a sophisticated businessman seeking to limit his damages after signing a customer document containing clearly identified arbitration language directly above the signature blank in response to his broker allegedly sending him only the second of two pages and instructing him that signing it was a "mere formality" which would enable her to open his account. Id. at *1. Characterizing this "mere formality" challenge as a fraudulent inducement argument, the Court stated "[a] party claiming fraud in the inducement of an arbitration clause itself must show that one party 'made a specific representation regarding the arbitration clause or in some other way prevented or dissuaded the other party from becoming aware of [its] existence.'" Id. at *2 (citing Rosen v. Waldman, No. 93-CV-225 (PKL), 1993 WL 403974 (S.D.N.Y. 1993). In holding the arbitration clause valid, the court found that there were emblazoned warnings of the arbitration clause (as in the case at bar), and that the broker "had no duty to disclose the existence of the clause, and therefore engaged in no fraud by failing to do so." DeFries, 1994 WL 455178 at *2.

---

(well before Plaintiffs opened accounts at RBC Dain Rauscher). Such allegations must go to arbitration under Prima Paint, 338 U.S. 395 (1967). See Rubin, 457 F. Supp. 2d at 195-96.

Regardless, for the same reasons discussed above at Point III(B) and (C), plaintiffs cannot show they were denied a reasonable opportunity to know the character of the document, and cannot show excusable ignorance of the content of the writing. These sophisticated businessmen ignored their independent duties to inform themselves about the Account Agreements they signed, and their child-like reliance upon alleged representations made to them is not credible. Further, Plaintiffs do not even relate what it is they thought that they were signing, if not a document necessary to open their accounts with RBC. Clearly, the alleged "fraud" could not have caused Plaintiffs to believe that their signing the Account Agreements was something different than what is actually was – signing agreements to open brokerage accounts.

**E.    RBC Dain Rauscher Had no Fiduciary Obligation to Inform Plaintiffs of the Existence of the Arbitration Provision in the Account Agreements.**

Plaintiffs claim that RBC Dain Rauscher had an obligation, at the outset, to inform Plaintiffs of the existence of the arbitration provisions in the Account Agreements they signed puts the cart before the horse and must be rejected. As noted above, DeFries found that the broker "had no duty to disclose the existence of an arbitration clause, and therefore engaged in no fraud by failing to do so." DeFries, 1994 WL 455178 at *2. Additionally, the Rosen Court stated "[t]he mere failure of a stockbroker to disclose or explain an arbitration clause to a client cannot constitute fraud because stockbrokers owe no such affirmative duty to disclose or explain." Rosen, 1993 WL 403974 at *3; accord Rush v. Oppenheimer, 681 F. Supp. 1045, 1052 (S.D.N.Y. 1988) (brokers are not required as a matter of law to disclose or explain arbitration clauses in a securities account agreement to the customer.).

## POINT IV

### PLAINTIFFS' CLAIMS ARE WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT.

Where it has been determined that parties have entered into binding and enforceable agreements to arbitrate their disputes, the scope of the arbitration provision must be addressed. Of course, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25. As set forth in RBC Dain Rauscher's moving brief, all of Plaintiffs' claims arise out of and concern transactions in their accounts, the performance and alleged breach of the parties' agreements, and/or transactions pertaining to securities and other property. Plaintiffs apparently concede this point, as their Opposition brief makes no attempt to dispute this.

## POINT V

### PLAINTIFFS' DECLARATIONS ARE INVALID.

Plaintiffs' declarations attached to the Opposition Motion, absent any certificate of translation, are invalid and fail to support their argument to prevent arbitration. The summary judgment standard is appropriate in determinations of arbitrability, "regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration." Bensadoun v. Jobe-Riat, 316 F. 3d 171, 175 (2d Cir. 2003). Federal Rule of Civil Procedure 56(e) states the requirements that affidavits supporting and opposing motions for summary judgment:

> shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

FED R. CIV. P. 56(e). Affidavits based on secondhand information will not support a motion for summary judgment and are not properly considered by the court. See Chandler v. Coughlin, 763 F.2d 110, 113-14 (2d Cir. 1985). And affidavits of non-English speakers that were never

adequately translated do not support the documents to which they are attached.  See People v. Camacho, 185 Misc.2d 31, 711 N.Y.S.2d 283, 288 (N.Y. Crim. Ct. 2000) (upon sufficient indicia to question whether a filing is adequately translated to a non-English speaking complainant, and where no certificate of interpretation is filed, a complaint that was never translated must be dismissed); People v. Banchs, 173 Misc.2d 415, 661 N.Y.S.2d 450 (N.Y. Crim. Ct. 1997) (same).

Allegedly, Plaintiff Glonti's capability to read English is "severely limited," and Plaintiff Dateshidze cannot "read English at all."  (Decl. of Glonti at ¶¶ 3, 19-21, 114).  Furthermore, despite Glonti's statement that his declaration was prepared for him because of his "disability," Dateshidze states that his declaration "was prepared in English and then translated to Georgian for me by Dr. Irakli Glonti."  (Id. at ¶ 20; Decl. of Dateshidze at ¶ 8).  However, Glonti's declaration is not accompanied by any certificate of translation.  Plaintiffs cannot assert that they do not speak English in the very documents that they must not have understood.  Such declarations cannot be considered based on personal knowledge, would be inadmissible as evidence, do not affirmatively demonstrate Plaintiffs' competency to testify to the matters stated therein, and cannot properly be considered by the Court.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court compel arbitration of all of Plaintiffs' claims against RBC Dain Rauscher and stay the litigation of this action pending completion of the arbitration.

Dated:  New York, New York
   January 18, 2008

Respectfully submitted,

BRESSLER, AMERY & ROSS, P.C.
Attorneys for Defendant, RBC Dain Rauscher, Inc.

By:_____ /s/ Brian F. Amery____
   Brian F. Amery (BFA 7144)

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2008, a copy of the Reply Brief of RBC Dain Rauscher, Inc. In Further Support of Motion To Compel Arbitration And Stay Proceeding was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court 's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

_____/s/ Brian F. Amery_____
Brian F. Amery (BA 7144)
BRESSLER, AMERY & ROSS, P.C.
17 State Street
New York, New York  10004
(212) 425-9300
Attorneys for Defendant
RBC Dain Rauscher, Inc.

## SERVICE LIST

Arnold I. Kalman, Esq.
Law Offices of Arnold I. Kalman
245 South Hutchinson Street
Philadelphia, PA  19107-5722
Attorneys for Plaintiffs
Dr. Irakli Glonti and David Dateshidze

Theodore A. Krebsbach, Esq.
Theodore R. Snyder, Esq.
Krebsbach & Snyder, P.C.
1 Exchange Plaza
55 Broadway, Suite 1600
New York, NY  10006
Attorneys for Defendant Lehman Brothers, Inc.

888536